HUNTER v. THE BURNSVILLE TURNPIKE COMPANY.

TURNPIKES.—*Action for Penalty.—Pleading.*—In an action by a turnpike company, to recover a penalty for refusing to pay toll, the complaint need not aver that the defendant had "passed" a toll-gate on the plaintiff's turnpike.

SAME.—*Averment of Fraud.*—In averring a fraudulent intent in the defendant, in such complaint, it is sufficient to aver his refusal to pay the lawful toll due to the plaintiff, with "intent to defraud."

SAME.—*Constitutional Law.—Title of Act.*—The title of the act approved May 12th, 1852, (1 R. S. 1876, p. 654,) entitled "An act authorizing the construction of plank," etc., "roads," properly embraces the subject-matter of the 17th section thereof, authorizing actions to collect penalties.

SAME.—*Mortgage by Turnpike Company.—Statute Construed.*—The right of a turnpike company to execute a mortgage upon its road is recognized by the act of March 5th, 1859, (1 R. S. 1876, p. 668,) authorizing purchasers of a turnpike road, "under mortgaged sale" thereof, to organize as an incorporated company.

SAME.—*Foreclosure.—Sheriff's Sale.—New Company.—Attacking Mortgage and Judgment.—Fraud.*—Where upon a valid decree of foreclosure of such mortgage, rendered by a court of competent jurisdiction, such road is sold at sheriff's sale to a purchaser, who, under such act of March 5th, 1859, has organized a new company, the defendant in an action by such company to collect a penalty can not question the validity of such mortgage, nor attack such decree except for fraud practised in obtaining it.

SAME.—*Description.*—A description of such road, in such mortgage and decree, and in the writ, notice of sale and sale thereunder, as "the entire road of said company," naming it, "in" the county and State wherein it is located, "completed and to be completed, with all the property of said company, rights of way and franchises of every description," is sufficient.

SAME.—*Turnpike Located on Highway.—Right of Way.—Sheriff's Sale.—*

Hunter *v.* The Burnsville Turnpike Company.

Where, by the consent of the proper county board, a turnpike is constructed upon the line of a public highway, the title to the right of way vests in the turnpike company, and, upon foreclosure and sale, in the purchaser.

SAME.—*Manner of Making Sale.*—The offering of the rents and profits, and then of the fee-simple, of a turnpike, in a sale thereof by a sheriff, does not vitiate such sale.

SAME.—*Right of Redemption.*—No right of redemption attaches to a foreclosure and sale of a turnpike.

SAME.—*Judicial Sale on Defective Writ.—Amendment of Process.*—A judicial sale of property, made on a writ not attested by the seal of the court from which it issued, is voidable only, and, even after such sale and the return of such writ, the latter may be amended by attaching such seal.

SAME.—*Statute of 8 Henry VI.*—Such amendment is authorized by the statute of 8 Henry VI., c. 12, which is in force in this State.

SAME.—*Constitutional Law.—Title of Act.—Inspectors.*—The title of the act of March 5th, 1875, (1 R. S. 1876, p. 669,) entitled "An act legalizing extensions of * * turnpike roads, * * providing for the inspection of such roads," etc., properly embraces the subject-matter of the 3d section thereof, authorizing the appointment of, and reports by, inspectors of turnpikes.

SAME.—*Power of Legislature.—Inspectors' Reports.*—It was within the constitutional power of the legislature to provide for the appointment of such inspectors, and that reports by them should be conclusive evidence of the lawful completion of turnpikes inspected by them.

SAME.—*Officer.—Inspector not Sworn.—Report.—Approval of.*—Such inspector is not an officer within the meaning of the constitution of this State, and the statute authorizing his appointment and report does not require that he be sworn, nor that such report be approved by the county board.

SAME.—*Appeal.*—An appeal in such case is authorized directly from such report, and not from any action of the county board.

SAME.—*Evidence.—Report can not be Contradicted.—Failure to Repair.*—Where such inspector has reported concerning a turnpike which he has been appointed to inspect, that the same has been constructed according to law, it is conclusive evidence of that fact in any suit by the company for a penalty, and can not be contradicted by the defendant; but evidence that, since the making of such report, such turnpike has been negligently allowed to become and remain out of repair, is admissible in bar of the action.

SAME.—*Belief of Defendant.—Fraud.*—Evidence that the defendant had in good faith refused to pay toll because of his *bona fide* belief that such turnpike had not been completed according to law, or that the same was out of repair, or that the plaintiff's title thereto was fraudulent, is not admissible in such action to rebut the inference that his refusal was fraudulent.

From the Bartholomew Circuit Court.

*F. T. Hord,* for appellant.

*R. Hill, N. Carr, —. Burns* and *S. Stansifer,* for appellee.

WORDEN, J.—Action by the appellee against the appellant, to recover penalties for refusing to pay toll for travelling on the plaintiff's road. The action was brought before a justice of the peace, and appealed to the circuit court, where it was tried by the court, resulting in a finding and judgment for the plaintiff, a new trial being denied to the defendant.

There were several paragraphs in the complaint, to which demurrers, for want of sufficient facts, were filed and overruled.

It will be sufficient, for the purposes of the case, to set out one of the paragraphs, as it is conceded by counsel for the appellant, that they are alike in substance.

We take the following copy of one of the paragraphs from the brief of counsel for the appellant:

" The Burnsville Turnpike Company complains of Jesse Hunter, and says, that on the 7th day of October, 1875, plaintiff was the owner of a turnpike, or gravel road, leading from a point near the city of Columbus, Indiana, where the Columbus and Hope Turnpike Road leaves the Madison and Indianapolis State Road in a northerly direction; thence from that point over and along the said Madison and Indianapolis State Road, or as near thereto as it was practicable to make it; and then had three consecutive miles of said road completed, and had erected a toll-gate and toll-house on the portion thereof completed; and the rate of toll established by plaintiffs over said road was and is for a one-horse vehicle two cents per mile; and the rates of toll were placed in full view, in legible and large letters, upon said toll-house, and said company had an agent at said gate to collect tolls lawfully due from persons travelling upon said road; and on

said day said defendant travelled with a one-horse vehicle upon said road a distance of, to wit, three miles, whereby he became liable to pay, as toll therefor, to wit, the sum of six cents, which said sum was then and there demanded of him by plaintiff's said agent, but which said defendant, with the intent to defraud said company, refused to pay; whereby an action hath accrued to plaintiff to demand and recover of and from said defendant the sum of three dollars, forfeited to plaintiff by the form of the statute in such case made and provided; for which plaintiff demands judgment."

The paragraphs are based upon the 17th section of the "act authorizing the construction of plank," etc., roads, 1 R. S. 1876, p. 660, which provides, amongst other things, as follows:

"If any person or persons using any part of such road shall, with intent to defraud such company, * * * refuse to pay the toll he is bound by law to pay, * * * each and every person concerned in such fraudulent practice shall, for every such offence, forfeit and pay to such company three dollars, which shall be recovered in the name of the company in an action of debt before any justice of the peace of the county where the offender may be found," etc.

It is claimed that the complaint was bad, because it did not allege that the appellant passed a toll-gate. The position assumed is, that the appellant was not bound by law to pay any toll, though he travelled upon and used the road, unless he passed a gate; that he could not be liable to a penalty or forfeiture for a refusal to pay toll which he was not bound by law to pay.

If the premise is correct, the conclusion seems to be inevitable. But, in our opinion, the premise can not be maintained. Where the company has completed three consecutive miles of its road, and has erected its gates, it has the right to collect toll of the traveller, whether the latter pass through a gate or not. This was decided in

the case of *The Morton Gravel Road Co.* v. *Wysong*, 51 Ind. 4, and we see no reason to change the conclusion then arrived at.

It is further objected, that the complaint was bad, because it did not set out any circumstances of fraud. There were no circumstances necessary to entitle the plaintiff to the forfeiture, except the use of the road by the defendant, and his refusal to pay the toll which he was bound by law to pay, with intent to defraud the company. All this is alleged.

But it is insisted that the section of the statute on which the action was based is unconstitutional and void. It is claimed that the subject-matter of the section is not embraced in the title of the act. The title of the act is as follows:

"An act authorizing the construction of plank, macadamized, and gravel roads."

We are of opinion that the matters embraced in the section are properly connected with the subject expressed in the title of the act.

If not, we do not see how many other matters contained in the act—such as provisions for the organization of corporations; condemning of lands for the road; fixing the rate of tolls, and many others necessary to make the law effective—can be. A construction that would strike out section 17, as containing matters not properly connected with the subject expressed in the title, would strip the law of many of its other provisions, necessary to its operation, and leave it a bare skeleton; lifeless; impracticable; useless.

It seems to be clear that legislation fixing the rate of toll to be charged on the roads, and providing penalties for the non-payment thereof, is properly connected with the subject of the construction of the roads.

Other provisions of the constitution are suggested as being violated by the section, but we are of opinion, without taking up space for details, that the section is not

obnoxious to any constitutional objection. The objection to the complaint can not be sustained.

By agreement, all matters in abatement or in bar were to be given in evidence without answer.

The plaintiff proved the organization of the Columbus and Burnsville Turnpike Company for the construction of a specified road, the application of the latter company to the board of commissioners of the county for leave to lay out its road or turnpike upon certain highways specified, and the consent of the board of commissioners thereto, as is provided for by statute. 1 R. S. 1876, p. 655, sec. 4.

The plaintiff also gave in evidence the record of a judgment of the Bartholomew Circuit Court, obtained by Simeon Stansifer, against the last named company, for the foreclosure of a mortgage upon the road of that company, executed by the directors thereof to said Stansifer, in trust for himself and others, to secure the payment of certain debts. Also, the order of sale issued upon the judgment, and the sheriff's return thereon, showing the purchase of the road by Stansifer for himself and others, and the organization of a new company by the purchasers, under the name of the Burnsville Turnpike Company, the appellee herein, and the filing of the statement, as provided for by the act of March 5th, 1859. 1 R. S. 1876, p. 668.

The appellant insists that the mortgage and the judgment of foreclosure rendered upon it were void, and that the purchasers acquired no title, because the mortgage was executed by the directors, without the consent of the stockholders, to secure, amongst other thing, debts due to themselves. The statute last above cited recognizes the right of such companies to execute mortgages upon their roads and appurtenances, and provides, that the purchaser or purchasers " shall have the right, by such name as he or they may assume, to hold, own and possess the road, or [the] part thereof so purchased, and to have and enjoy all the

rights, privileges, franchises, and immunities of said company over said road, or the part thereof so purchased."

We shall enter upon the consideration of no question as to the validity of the mortgage on which the judgment of foreclosure was rendered, because such question could not have been involved in the case. There was a valid judgment rendered by a court having jurisdiction of the parties and of the subject-matter. Such judgment can not be impeached, except for fraud, when it comes in question collaterally, as in this case. *Horner* v. *Doe*, 1 Ind. 130; *Evans* v. *Ashby*, 22 Ind. 15; *Waltz* v. *Borroway*, 25 Ind. 380; *Gavin* v. *Graydon*, 41 Ind. 559.

The fraud for which the judgment could be impeached must be a fraud in procuring the judgment itself, and not a fraud in the execution of the instrument on which the judgment was rendered. *Markle* v. *The Board, etc.*, 55 Ind. 185.

There was a judgment for the foreclosure of the mortgage and the sale of the road. This judgment, in the absence of fraud in obtaining it, which was not shown, was valid and binding, until reversed or in some way set aside, and a sale under it vested the title in the purchasers, in accordance with the terms of the statute.

Hunter, as a traveller upon the road and as a ground of refusal to pay toll, can not call in question the validity of the mortgage on which the judgment of foreclosure was entered. If the mortgage was a fraud upon the Columbus and Burnsville Turnpike Company, or was such an one as the directors thereof had not power to make, the latter company might have made defence to the action to foreclose it. And if Hunter was one of the corporators of that company, and as such was injured by the mortgage and its foreclosure and the sale of the road, his interests as such corporator are bound by the judgment and sale, in the absence of any proper steps being taken to obtain relief.

We proceed to other questions.

It is claimed that the mortgage, judgment, writ and sale were nullities for uncertainty in the description of the road. The description is, " the entire road of the company in Bartholomew county, Indiana, completed and to be completed, with all the property of said company, rights of way and franchises of every description." We are of opinion that this description was sufficient. It was not necessary, as we think, to set out the road by courses and distances. That is sufficiently certain which can be made certain. A reference to the mortgagor's articles of association will show the location of the road mortgaged and sold.

The next objection, we will state in the language of the counsel for the appellant:

" So much of the mortgage as attempts to cover the right of way, and so much of the judgment as provides for the sale thereof, is void, for the reason that the company did not possess a mortgageable interest in the public highway."

This is an important question, for it would seem that if the purchasers acquired no right by their purchase to continue their turnpike upon the highways upon which it was originally established, these highways would revert to the public, from whom no toll could be demanded for passing over them.

But we think they acquired the right to continue their turnpike upon the highways on which it was originally located with the consent of the commissioners. The statute hereinbefore cited on the subject provides, amongst other things, as follows:

"And thereupon such State or county road or other public highway, or such portions thereof as may be so occupied or appropriated by said company, shall be and become the property of said company for the purpose of making and maintaining said road, and the gates and toll-houses thereon."

It is thus seen that the original company acquired a

property in the highways for the purposes specified, and this property could be mortgaged, and the purchasers under the mortgage would acquire the same property for the same purposes. See statute above cited as to what rights are acquired by the purchaser.

It is objected that the sale was void, because the sheriff advertised and sold the property as real estate, without sufficiently describing it. He advertised and sold it as "the entire road of said Columbus and Burnsville Turnpike Company, in Bartholomew county, Indiana, completed and to be completed, with all the property of said company, rights of way, and franchises of every description." He sold the property as real estate; that is, he first offered the rents and profits for a period not exceeding seven years, but, receiving no bid, he then offered and sold the fee-simple. We need not determine whether the property sold should be regarded as personal or real property. If real estate, the description was sufficient, as has been said in reference to the description in the mortgage, and the law was complied with in first offering the rents and profits. If personal property, the offering of the rents and profits first did not vitiate the sale.

If the property thus sold and purchased should, for any purpose, be regarded as real property, or as an interest in real property, still, upon a comparison of the act providing for such sales and the organization of new companies, and specifying the rights of such new companies, 1 R. S. 1876, p. 668, with the act providing for the redemption of real property, or of any interest therein, sold on any execution or order of sale, within one year, 2 R. S. 1876, p. 220, we are satisfied that the latter statute can not apply to such case.

It appeared that when the order of sale was issued to the sheriff, and when the sale was made and the order returned, and for some time afterward, it was not attested by the proper seal. The clerk had inadvertently omitted to attach the seal. But afterward, on a motion, to which

the Columbus and Burnsville Turnpike Company was made a party, the court ordered the proper seal to be attached. All the facts were properly shown.

It is claimed by the appellant, that the order of sale, without the seal, was absolutely void, and, therefore, that the sale was void, and could not be made good by subsequently attaching the seal. Many authorities upon this point are cited by the appellant, some of which sustain his position. But the authorities are not uniform upon the point.

There are cases which hold, that writs without a seal are not void, but voidable only, and that they may be amended, after they have been served, by attaching the seal. We incline to follow that line of decisions which holds, that process, without the proper seal, is voidable only, and therefore amendable, as being more in consonance with the general spirit of the law, which regards substance more than form. Much hardship and injury might accrue to purchasers of property on execution, or their vendees, if the sale happened to be made on an execution to which the seal, by inadvertence of the clerk, had not been affixed, if the defect could not be amended by affixing the seal. So, too, a sheriff who arrests a party on criminal process, perfect in all respects except the seal, would be liable to an action of trespass, unless the defect could be amended.

The statute of 8 Henry VI., c. 12, is in force in this State, which provides, " that the king's judges of the courts and places in which any record, process, word, pleas, warrant of attorney, writ, panel, or return, which for the time shall be, shall have power to examine such records, processes, words, pleas, warrants of attorney, writs, panels or returns, by them and their clerks, and to reform and amend (in affirmance of the judgments of such records and processes) all that which to them, in their discretion, seemeth to be misprision of the clerks therein, except appeals, indictments of treason, and of felonies and out-

lawries, so that by such misprision of the clerk no judgment shall be reversed or annulled." See *Makepeace* v. *Lukens*, 27 Ind. 435.

This statute authorizes the amendment of "writs" and "processes" in any matter that "seemeth to be misprision of the clerks therein," and would seem clearly to authorize the amendment which was made in this case. The case of *Sawyer* v. *Baker*, 3 Greenl. 29, is in point. There, after an execution had been issued and extended on the debtor's real estate and returned, it was discovered that the clerk had accidentally omitted to affix the seal; and Greenleaf & Fessenden, for the plaintiff, moved for an order to the clerk to amend the execution by affixing the seal, citing the above statute and other authorities. The court said: "The execution may be amended by having the seal of the court now affixed. The cases cited by the counsel clearly show the power of courts in the correction of errors committed by their clerks in judicial writs."

In *Purcell* v. *McFarland's Heirs*, 1 Ired. 34, it was held, that where the clerk of a superior court had omitted to affix the seal to writs of *fi. fa.* and *vendi.* the court might, at a subsequent term, order the clerk to affix the seal to the executions *nunc pro tunc*, in order to protect the purchaser of land sold under them. See, also, the case of *Clark* v. *Hellen*, 1 Ired. 421. In *Dominick* v. *Eacker*, 3 Barb. 17, a sheriff was sued in trespass for arresting the plaintiff, under process to which the seal of the wrong court was affixed, which was held by the court to be equivalent to having no seal affixed. But it was held, that the process was amendable, and that the defendant could justify under it.

So, in *Arnold* v. *Nye*, 23 Mich. 286, 293, COOLEY, J., said, in speaking of an execution, "The want of a seal, if one was really wanting, might have been supplied on motion to amend, and did not render the execution void."

See, also, *Jackson* v. *Brown*, 4 Cow. 550; *The People* v. *Dunning*, 1 Wend. 16.

We are of opinion, that when the order of sale, in this case, was amended by affixing the seal to it, the sale became as valid as if the seal had been affixed at the time the order was placed in the hands of the sheriff.

The plaintiff gave in evidence the record of the board of commissioners of the county, appointing, on the application of the plaintiff, Thomas Essex, as an inspector of the plaintiff's road, and the report of the inspector, showing that three and one-fourth miles of the road were completed, so as to authorize the plaintiff to take toll for travel thereon, specifying the portion thus completed.

These proceedings were had in accordance with the 3d section of the act of March 5th, 1875, 1 R. S. 1876, p. 669.

As several questions arise upon that section, we set it out in full, as follows:

"Sec. 3. Any plank, gravel, or turnpike road company heretofore, or hereafter organized, may apply to the board of county commissioners where such company is organized, for the appointment of an inspector of its road, and such board of commissioners shall appoint a competent civil engineer of the county, who shall view and inspect such road and make his report at the next regular or special meeting thereof in writing. The report shall state the number of miles of the road, if any, completed, so as to authorize the taking of tolls for travel thereon; and such report, if it shows that three consecutive miles of such road have been completed, as aforesaid, shall be conclusive evidence in any trial that so much of said road is so completed, and of the right of such company to take tolls for travel over all of said road so completed: *Provided*, That the term three consecutive miles shall not be so construed as to require watercourses to be bridged, across which such road runs, where there are not three miles of road on either side of the stream: *Provided, further*, That nothing in this act shall be construed as repealing or af-

fecting section 10 of 'An act authorizing the construction of plank, macadamized, and gravel roads,' approved May 12th, 1852. The report herein provided for, may be appealed from to the circuit court of the proper county by such company, if not satisfied therewith, and if favorable to the company, then by any person interested in the same manner that appeals are taken from the decision of the board of county commissioners, and upon the trials of such appeal such report shall be deemed and held to be *prima facie* correct. The inspector herein provided for shall be paid by such company the sum of five dollars per day for his services, and such company shall pay all other costs of such application and report."

It is objected that this section is void as not coming within the title of the act. The title is as follows:

"An act legalizing extensions of plank, gravel and turnpike roads beyond their terminal points mentioned in the articles of association of companies making such extensions, to authorize such companies to take tolls for travel over such extensions, and to authorize such extensions to be hereafter made, providing for the inspection of such roads, and what shall be the effect of such inspections, and curing certain defects in the articles of association of such companies."

As we construe the language of the title, the words, " providing for the inspection of such roads," have reference to " plank, gravel and turnpike roads " generally, and not to extended roads merely.

The question arises, what is the subject expressed in the title? If the different specifications set forth in the title are to be regarded as so many different subjects, then the whole law must fall; for an act can embrace but one subject and matters properly connected therewith. But if, on the other hand, the specified particulars do not embrace different subjects, but have reference to one general

subject, which is sufficiently expressed in the title, then the act is valid.

We think the subject of the act is plank, gravel and turnpike roads, and that this subject is sufficiently expressed in the title, and that the act is valid. This view is fully sustained by the case of *Shoemaker* v. *Smith,* 37 Ind. 122. See, also, *The State, ex rel., etc.,* v *Tucker,* 46 Ind. 355. The enumerated particulars in the title, pertaining to the general subject, embrace the matter concerning the inspection of such roads generally; for, as has been stated, we think the language ·in that respect applies to such roads generally, and not merely to such as have been, or may be, extended.

It is claimed that the section is void as being in conflict with several other provisions of the constitution, which we need not particularly notice. We, however, think it is not in conflict with any of them. We think the legislature had the power to provide for the appointment of an inspector, to inspect the road of any company that might make application for the appointment of such inspector, and to provide what effect his report should have as matter of evidence.

We are aware that it has been held, that the Legislature can not make a tax deed conclusive evidence of title in the purchaser. "If the land was not liable to taxation by reason of an exemption, if no taxes had been assessed upon it, or if the taxes had been paid, the power of sale never attached to it. To hold that the owner, under such circumstances, is precluded from showing the fact, would be a ' monstrous doctrine.'" Blackwell Tax Titles, 81. "But there is no constitutional objection to making a tax-deed conclusive as to non-essentials. Thus the assessment of land, and the delivery of tax-books, and collection of taxes, and return of delinquent tax-lists, in the particular time and manner required by law; the assessment of all the land in the county, the issue of precept for the sale of the land; the sale of land at the court-house door, and in

the smallest subdivisions, are not essential prerequisites of the lawful exercise of the taxing power of the State; and the act concerning tax-deeds can not be declared unconstitutional, because it makes the deed conclusive evidence, that these things had been rightly done." Blackwell, *supra*, 82, note 1. See, also, on this subject, *White* v. *Flynn*, 23 Ind. 46.

The statute under consideration provides, that "such report, if it shows that three consecutive miles of such road have been completed, as aforesaid, shall be conclusive evidence in any trial that so much of said road is so completed, and of the right of such company to take tolls for travel over all of said road so completed."

It was quite proper, as we think, that some means should be adopted to determine when such roads should be completed, or so far completed as to authorize the companies to charge toll. The Legislature saw proper to have that question determined by the report of an inspector appointed for that purpose, whose report is made conclusive evidence upon the subject. But there are safeguards thrown around the rights of the public as well as those of the companies. The companies, or any one interested, may appeal from the report of the inspector "in the same manner as appeals are taken from the decision of the board of county commissioners." There is no great hardship in making the report of the inspector conclusive, when the right of appeal is thus given, but no appeal is taken; nor do we think the law unconstitutional which makes the report, unappealed from, conclusive.

But it is objected that the inspector was not sworn, and that there is no provision in the law requiring him to be sworn. Every person elected or appointed to any office under the constitution is required, before entering on the duties thereof, to take the proper oath. Const., art. 15, sec. 4. The inspector, however, is not an officer. He is simply appointed by the board to inspect a particular road, when application is made to the board for that

purpose. As the Legislature did not require him to be sworn, we know of no principle on which we can say that, to make his acts valid, he must be sworn.

It is urged that the report of the inspector was not valid, because the board of commissioners never acted upon or approved it; that it was necessary that the board should have acted upon it, in order that an appeal might be taken. The law does not contemplate or require that any action should be taken upon the report by the board of commissioners; and the appeal is given, not from any action of the board, but from the report itself.

The appellant offered to prove on the trial, that the appellee had never completed three consecutive miles of its road, in this, that the entire length of road claimed to have been completed was only three and one-quarter miles, and that the road was intersected about midway by a creek, which at times was a violent and dangerous stream, and after heavy rains was wholly impassable; that the banks of the stream were steep and muddy, and difficult and inconvenient to travel; that the stream might have been, but was not, bridged; whereby the consecutive three miles were broken. He also offered to prove that the three and a quarter miles never had been constructed and completed in the manner required by the statute, specifying the particular defects. But this evidence was all rejected, on the ground that the report of the inspector was conclusive, that the three and a quarter miles had been duly completed. In this ruling the court committed no error. The law makes the report of the inspector conclusive upon that question, and no evidence could be received to contradict it.

In reference to the stream, it may be observed that the statute set out provides, that "the term three consecutive miles shall not be so construed as to require watercourses to be bridged, across which such road runs, where there are not three miles of road on either side of the stream."

The appellant further offered to prove, that, at the sev-

eral times when he passed over the road, he, in good faith, believed that the road was not constructed of a material, with which a smooth and permanent road, of a hard and even surface, could be made; that there were not three consecutive miles completed, and that it was out of repair so as to be inconvenient for travellers, and that the mortgage given, and the judgment thereon, and the sale were fraudulent, illegal and void. This evidence was rejected, and, as we think, properly.

It is claimed that the evidence was competent as tending to rebut any inference of an intent to defraud the company in the appellant's refusal to pay toll. The report of the inspector, as has been seen, was conclusive on the question of the construction of the road, so as to give the company the right to take toll for travel thereon; and the appellant's belief, that it had not been so constructed and completed, would not, it seems to us, in the least degree, tend to repel any inference of intent to defraud the company by refusing to pay toll. His willingness to act upon his own private belief, against evidence which the law makes conclusive, is not a circumstance tending to repel any inference of a fraudulent intent. In respect to the appellant's belief as to the mortgage, judgment and sale, we may observe that those were matters that did not at all concern him as a traveller upon the road.

His belief as to the road being out of repair could not be substituted for proof of the facts in that respect.

The appellant also offered to prove by competent witnesses, that, at the several times when he refused to pay toll, the company had, since the report of the inspector, suffered so much of the road as the appellant travelled over to become and remain out of repair, occasioned by deep ruts and mud holes, obstructions in the road, so as to be inconvenient and difficult for the public travel, hindering and delaying travellers, for a longer period of time than would be required to make the necessary repairs with a reasonable force, the season of the year and

all equitable circumstances considered, to wit, four months. Objection was sustained to the introduction of this evidence, and the appellant excepted. In this ruling we think the court erred.

There is a marked and material difference between evidence showing that the road never was constructed or completed as required by the law, thereby contradicting the report of the inspector, and evidence that, since the report, the company had suffered the road to become and remain out of repair.

It is claimed by the appellee, that, as the report of the inspector is made conclusive evidence, in any trial, of its right to take toll for travel over the portion of the road reported to be completed, evidence could not be received that such portion had been suffered to become and remain out of repair. In order to determine this question understandingly, we must take into consideration several statutory provisions.

By the 3d section of the act of March 5th, 1875, above set out, providing for the appointment of an inspector, the making of his report and the effect thereof, it is expressly provided, that nothing in that act shall be construed as repealing or affecting section 10 of "An act authorizing the construction of plank, macadamized, and gravel roads," approved May 12th, 1852.

Sec: 10, referred to, is as follows :

" Sec. 10. If any such road, after its completion, or any part thereof, shall be suffered to be out of repair so as to be impassable for the space of one year, unless when the same is repairing, said company shall be liable to be proceeded against by *quo warranto;* and if such company shall suffer the road to be out of repair to the hindrance or delay of travellers for any unreasonable length of time, they shall have no right to collect tolls thereon until the same is repaired." 1 G. & H. 477.

Now, it is apparent that the Legislature did not intend that the report of the inspector should have the effect of

requiring toll to be paid where the company suffers its road to be out of repair, to the hindrance or delay of travellers for any unreasonable length of time, until it is so repaired. Such, however, would be the effect if the report of the inspector should be so construed as to shut the door against the admission of proof that the road had been suffered to become out of repair.

It may be that section 10 had been superseded by subsequent legislation, in whole or in part, but the intention of the legislature is just as manifest, whether the prohibition of the right to collect toll while the road is out of repair be found in section 10 or some subsequent legislation that supersedes it.

The 1st section of the act approved March 5th, 1859, 1 R. S. 1876, p. 671, is as follows:

"That hereafter, whenever any gravel, turnpike, macadamized or plank road shall be suffered to get and remain out of repair for a longer period of time than would be required to make the necessary repairs with a reasonable force, the season of the year and other equitable circumstances considered, the corporation or company, owner or owners of such road shall not be entitled to receive and collect toll upon such road, or upon so much of the same as is out of repair, while the same shall remain out of repair, and it shall be lawful in any suit for the collection of toll, or any penalty for failure to pay such toll, for the defendant to plead such want of repair in bar of said suit."

The remaining portions of the act, the 5th section of which was amended in 1875, provide for proceedings against the corporations to compel repairs, or to procure a judgment of forfeiture of franchises, where the road has been suffered to be out of repair for the space of six months or more at a time.

It is claimed by the appellee, that the act providing for inspection of such roads, taken in connection with the amended 5th section of the act of March 5th, 1859, re-

peals, by implication, the 1st section of that act, above set out. We are not of that opinion. There is nothing in the amended 5th section of the act that is at all inconsistent with the 1st section, and we have already seen that, by the act on the subject of inspection, above set out, the legislature did not intend to change the law as it then stood on the subject of the payment of tolls, where the road was suffered to be out of repair.

The 1st section of the act is in full force, and this authorized the defendant to show such want of repair, as is therein specified, in bar of the action. Upon the road being out of repair, as is specified in the 2d section of the act, for the space of six months or more at any one time, such proceedings may be had as are provided for in the 2d and subsequent sections of the act.

Taking all the statutes together, we think it clear that the provision in the act in relation to inspection and the inspector's report, that the report shall be conclusive evidence " of the right of such company to take tolls for travel over all of said road so completed," must be construed to mean that the report shall be conclusive evidence of such right, so far as it depends upon the completion of the road in whole or in part, and nothing more.

The Legislature evidently did not intend that the report of the inspector should be conclusive evidence that the road, since its completion, was kept in proper repair.

For the error in rejecting the evidence offered in respect to want of repairs, the judgment below will have to be reversed.

The judgment below is reversed, with costs, and the cause remanded for a new trial.