**HOUSTON OIL CO. OF TEXAS v. RANDOLPH et al. (No. 429–3796.)**

(Commission of Appeals of Texas, Section A. May 16, 1923.)

**1. Execution ⬡102—Defective writ voidable only.**

Generally, where there exists a valid judgment, a writ of execution, though defective and irregular in failing to comply with some of the statutory requirements with reference to the form of the writ, is only voidable, and a sale thereunder cannot be attacked in a collateral proceeding.

**2. Execution ⬡94—Writ without seal is voidable only.**

A writ of execution without a seal is not void, but only voidable.

**3. Sunday ⬡30(3)—Execution writ not void.**

Issuance of writ of execution on Sunday *held* not to make it void; the statute (Paschal's Dig. art. 1424) prohibiting process on Sunday referring to original process in connection with institution of suit.

**4. Execution ⬡258—Insufficient description in sheriff's return not open to collateral attack.**

The objection cannot be raised on collateral attack upon execution sale that the execution was void because of insufficient description in the sheriff's return.

**5. Vendor and purchaser ⬡266(7)—Lien lost by suit for purchase price.**

Where vendor's administrator elected to sue purchaser and his sureties on note for purchase money, without foreclosure or seeking to recover the land, he affirmed the contract, and title vested in the purchaser, and the debt was presumed fully satisfied.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by the Houston Oil Company of Texas and others against R. J. Randolph and others, in which J. D. Hooks intervened. Judgment for defendants was affirmed by the Court of Civil Appeals (240 S. W. 655), and the named plaintiff brings error. Reversed and remanded.

H. O. Head, of Sherman, and W. W. Moore, Beeman Strong, Kennerly, Lee & Hill, and T. M. Kennerly, all of Houston, for plaintiff in error.

Oswald S. Parker, of Beaumont, for defendants in error.

GERMAN, J. The Houston Oil Company of Texas and the trustees of the Southwestern Settlement & Development Company brought suit in the district court of Hardin county against R. J. Randolph and others to recover the George Burrell 320-acre survey of land in that county. H. A. Hooks disclaimed, but filed a cross-action for dam-ages. J. D. Hooks intervened, claiming the land. Judgment by default in favor of J. D. Hooks was rendered against Randolph, and he also recovered as against the plaintiffs the land sued for. H. A. Hooks recovered a judgment for $1,100 damages on his cross-action. The judgment of the district court was affirmed by the Court of Civil Appeals at Beaumont. 240 S. W. 655. Since the trial the Southwestern Settlement & Development Company has made some adjustment of its claim and the Houston Oil Company of Texas alone is plaintiff in error.

All parties claimed the land under John Collier, assignee of George Burrell. After the death of Collier his administrator sold the land to Cave Johnson, the deed being dated July 20, 1860. The consideration for this conveyance was one note for $305, secured by a vendor's lien on the land. In 1866 the administrator of the Collier estate sued Cave Johnson and his sureties on this note, and secured a judgment for $444.05. No foreclosure of the vendor's lien was asked or obtained. Execution by virtue of this judgment was issued to Jefferson county, but the judgment was not satisfied. May 24, 1868, execution issued to Hardin county on this judgment, which, according to the sheriff's return, was levied upon "320 acres of land, the headright of John Collier, assignee of George Burrell." On July 7, 1868, the sheriff sold the land to S. E. Parker for $14. Plaintiff in error claims an interest in the land by regular chain of title from Parker. Intervener Hooks claimed under a deed from the heirs of Cave Johnson.

Plaintiff in error offered in evidence the original execution under which the land was sold to Parker, and this was objected to on three grounds: (1) That the writ was void because it did not have on it the impress of the seal of the court; (2) that it was void because issued on Sunday; and (3) that it was void because of insufficient description of the property levied upon. The trial court sustained all of these objections and excluded the writ of execution. The sheriff's deed was offered and was objected to because there was no valid execution and sale to authorize it, and this objection was sustained. This link in the title of plaintiff in error being stricken out by the trial court, it was held not entitled to recover, and judgment was rendered in favor of intervener Hooks.

The Court of Civil Appeals discussed but one proposition, holding that the writ of execution was void because it did not have on it the seal of the court, and this presents a very interesting question for our determination. In view of the exhaustive and able opinion of the Court of Civil Appeals we have made extensive research among the authorities. The precise question has not

heretofore been before any of our appellate courts.

On first investigation, there is found some conflict of decision and much apparent confusion upon the question of whether a writ of execution not attested by the seal of the court is void or is only voidable; but a closer study of the matter discloses that there are no substantial grounds for conflicting opinions.

We believe the confusion with reference to this question results because of three principal reasons:

First, a failure to discriminate between writs of execution and other writs and summonses which are of a jurisdictional character.

Second, a failure to observe the distinction between the results that may be reached and have been reached in direct proceedings and those attempted to be attained by collateral attacks.

Third, the indiscriminate use of the word "void," when only "voidable" was intended. It is common knowledge that courts, in referring to certain matters which have fallen under judicial condemnation in direct proceedings brought to test them, speak of such as "void," because in that particular proceeding they were held invalid, when in fact they were only voidable.

The status of opinion, and the tendency of decisions, is stated in Freeman on Executions (1900 Ed.) vol. 1, pp. 210–212, in this language:

"The effect of the failure to affix the seal of the court to an execution is a subject upon which the authorities are too evenly divided to warrant us in expressing a very decided opinion. The question has been much more frequently determined than discussed by the courts. The conclusions on either side have been announced with a curtness and dogmatism that disdained argument and explanation, and cared neither to deal with logic nor delve for precedents. On the one side, the theory seems to be that before the seal is affixed there can be no writ; that without the seal there can be no legal command to execute the judgment of the court; that an officer, acting in the absence of the seal, acts in the absence of the writ, and that, so acting, whatever he does is unjustifiable and void. This question was recently re-examined in the Supreme Court of Kansas. The Constitution of that state provides that all courts of record shall have a seal, to be used in the authentication of their process, and, in construing this language, the court, in Dexter v. Cochan, 17 Kan. 447, declared that a summons issued without a seal is void. The majority of the court was of the opinion that the rule thus announced respecting a summons was equally applicable to a writ of execution, and that the constitutional provision is mandatory, and a writ issued without a seal was not amendable, and was hence void. On the other side, it is assumed that the omission of the seal is the omission of a matter of form rather than of substance; that it can be corrected by amendment, on application to the court, and that, being an amendable error, it cannot utterly avoid the writ. This view seems to us entitled to favorable consideration, and to be constantly gaining ground. Of all the different parts of the writ, this is most purely a mere matter of form, and its omission the least likely to prejudice either of the parties, or to mislead the officer in executing the writ. Without it there is certainly enough to indicate the judgment to be enforced, and that the command for its enforcement proceeds from competent authority, and a writ indicating this, and in fact issued by the clerk of the court, ought to be treated as valid, at least until objected to by some proceeding to set it aside. When, after the lapse of a long period, a writ is offered in evidence, a very slight and indistinct impression will be presumed to have been made by a seal."

The conflict of opinion indicated by Mr. Freeman is confined largely to the decisions of a very early date, made at a time when the courts were inclined to closely follow the rigid rules of the common law. But few cases involving the validity of writs of execution have been decided by the courts, and very few of them in recent years. The tendency of modern decisions, which interpret the common law in the light of progress and changed conditions, so as to magnify the spirit and substance, rather than the form and letter, in the attainment or justice, is in favor of the principle that no writ without the seal of the court, whether jurisdictional or issued in the progress of the suit and in the enforcement of the decree, is void; but at the most is only voidable and subject to be corrected or set aside in timely proceedings for that purpose.

It is necessary in this discussion to get a proper understanding of the wide difference between a writ or summons which has for its purpose the invoking of the jurisdiction of a court and bringing under that jurisdiction the person and property of a defendant, and a writ of execution, which follows as a result of the judgment and decree of a judicial tribunal, after the defendant has had his day in court, and the issuance of which is a ministerial act on the part of the clerk. Writs of the first class, such as ordinary citations. are generally referred to as original writs, while executions are generally designated as judicial writs. We call attention to this for the reason that, with one or two exceptions, all of the authorities cited by the Court of Civil Appeals were concerned with citations or summonses, and did not relate to writs of execution. And we might also say here that practically every case referred to by that court was a direct proceeding,, having for its purpose the setting aside of, or relief from, acts done under a defective or insufficient writ.

Before a citation of authorities, it is well to state that one of the test as to whether

or not a writ is void, or only voidable, is whether or not it is amendable. If absolutely void, it cannot be amended; but if only voidable it is amendable, unless rights have intervened to prevent.

We desire to refer to the case of Wolf v. Cook (C. C.) 40 Fed. 434, first as authority in support of the proposition that the writ of execution was not void, and for the purpose of illustrating the importance attached by the ancient common law to the necessity of the seal to original writs, which necessity now no longer exists, and particularly with reference to judicial writs, such as executions. The following extract is taken from the case referred to:

"Undoubtedly, at common law, an unsealed writ was void. Insurance Co. v. Hallock, 6 Wall. 556. The rule grew out of the conditions of society and the necessities of the state. An original writ issued out of chancery, and in the name of the king, the 'fountain of all justice.' It was a grant of jurisdiction from the sovereign to the court to which it was returnable; a sort of commission to the court of law to hear the cause. It was called by Coke 'the heart-strings of the common law.' The seal to the writ was the symbol of sovereign power; the authentication to the king's commission, the basis of all jurisdiction. Without the seal, the writ was void; conferring no right to the exercise of judicial authority, because the commission lacked the expression of royal sanction manifested by the great seal of state. Judicial writs were issued by the courts, and bore teste in the name of the chief justice of the court by which they were issued. The seal of the court authenticated the exercise of delegated judicial authority, not the grant of jurisdiction, and so possibly was of inferior consideration.

"It is in the conditions of ancient society that we must search for the importance attached to the seal. In early times, with respect to all instruments, whether private or public, the seal was the chief and essential proof of the authenticity of the document. It was guarded with jealous care, to prevent its unauthorized use. One instance is recorded of a seal separable into four parts; the parts assigned to separate keepers, as additional security against its fraudulent employment. In that day the seal upon its face identified its owner. Writing was not common as now, and there was necessity to authenticate the execution of documents by some solemn act, speaking the consent of the party. The seal, met that necessity; as to private writings, a substitute for the signature. It is, however, a long way from the speaking seal of that day to the 'unsightly excrescence,' and meaningless, printed scroll, or written scrawl, of the present. In the march of civilization and the diffusion of knowledge, the private seal has outlived its usefulness. That it still exists as essential to the validity of any private writing, is but another illustration of the truth that the customs of a people long survive the necessity which gave them birth. There is much sound common sense in the railing sarcasm of Judge Lumpkin upon the subject of the seal, in Lowe v. Morris, 13 Ga.

150,—carried, perhaps, too far, when applied to official seals. Formality is yet a necessity in the administration of government. The compulsion of authority is still essential to the well-being of society, and authority needs the concomitants that appeal to the senses, exacting obedience, commanding respect. The average mind yet needs mental crutches. These are found in ceremonial dress, giving solemnity and impressing the imagination. Without any undue reverence for formality, it is, to my thinking, still most necessary and proper that judicial process, and the proceedings of judicial tribunals, should be characterized by such adherence to form and ceremony as shall secure decorum, and add dignity and impressiveness to the administration of justice. But formality should never be permitted to work injustice, or deny substantial right. The importance attached to the seal to writs was founded, not only in the reverence paid to all manifestations of kingly authority, and in the customs of society, but also in the necessities of the state. The seals of courts were lodged with custodians appointed by the king, and the sealing of the writ had to be purchased. This was a profitable source of revenue to the crown, and may have been the chief reason for the stringency of the rule.

"I find no authority in England to amend the writ with respect to the seal. As early as the time of Henry VI., parliament intervened to mitigate the rigor of the law, and to prevent miscarriage of justice arising from the subtleties of the common-law lawyers, and the mischievous errors of the clerks of courts, and by statute (8 Hen. VI. c. 12,) authorized the courts to amend writs and process issued by them, and to reform all therein arising from misprision of the clerk. This act clearly, I think, did not apply to original writs, which theoretically were issued by the king himself not out of courts of law, and were sealed with the great seal,—never in the custody of the courts to whom power of amendment was granted by the act. I think, also, the statute had no reference to the seal to judicial writs, since its omission could not arise from misprision of the clerk, who was not its custodian. It was assumed otherwise, however, in Hunter v. Turnpike Co., 56 Ind. 213; but I am referred to, and have found, no decision in England which recognizes any authority to amend any writ, original or judicial, with respect to the seal.

"In this country, jurisdiction is vested by the constitution. The matter of revenue is not present, to complicate the question; and the clerk is custodian of the seal of the courts. There would seem to be no reason why power should not inhere in the court to correct all errors in its proceedings caused by its officers, whether with respect to the seal to a writ, or otherwise. * * * The power to amend by requiring the omitted signature of the clerk to the writ is allowed, upon the principle that a court will not permit its suitors to suffer from the misprison of its officers. I fail to discover any greater sanctity in the seal than in the signature of the official charged with the duty of issuing the writ. There are respectable authorities holding to the inherent power of courts to amend with respect to the seal. * * *"

And again as authority upon the general proposition, and as emphasizing the difference between original writs and a writ of execution, we quote from the case of Kipp v. Burton, 29 Mont. 96, 74 Pac. 85, 63 L. R. A. 328, 101 Am. St. Rep. 544, as follows:

"It is contended that the reasoning in Choate v. Spencer [13 Mont. 127, 20 L. R. A. 424, 40 Am. St. Rep. 425, 32 Pac. 651], is applicable to the case at bar. We cannot agree with this contention. There is a distinction between a summons and a writ of execution, and by reason of that distinction the cases of Choate v. Spencer [13 Mont. 127, 20 L. R. A. 424, 40 Am. St. Rep. 425, 32 Pac. 651], and of Sharman v. Huot, 20 Mont. 555, 52 Pac. 558, 63 Am. St. Rep. 645, are not in point in this case. A summons is issued at the instance of the plaintiff, without any previous action on the part of the court. It is not necessary that it be served by an officer of the court. Section 635, Code of Civil Procedure. The court has no jurisdiction of the defendant until' the summons is served, and under the decisions in Choate v. Spencer [13 Mont. 127, 20 L. R. A. 424, 40 Am. St. Rep. .425, 32 Pac. 651], and Sharman v. Huot [20 Mont. 555, 63 Am. St. Rep. 645, 52 Pac. 558], the defendant cannot be put to the costs and trouble of appearing in court until served with a summons which complies with these specific provisions of law. An execution follows a judgment. The defendant has been in court. The subject-matter has been litigated. The court has jurisdiction. It has been judicially determined that the defendant is justly indebted to. plaintiff in a specific sum. It is the duty of the defendant to pay this sum. He did not pay it, and by authority of the court a writ of execution is issued by one official of the court (the clerk), directed to another official of the same court (the sheriff), commanding him to subject the property of the defendant to the payment of the judgment which by other provisions of law is a lien on his real estate, and which it is his duty to pay. The writ of execution is no more jurisdictional than are other orders made and writs issued in the case subsequent to the summons. The court obtained jurisdiction of the subject-matter of the action by the filing of a proper complaint, and of the defendant by the service of a valid summons. Nothing remained over which to acquire jurisdiction. The execution was not jurisdictional. It was only a procedure in the case; its sole function being to carry · into effect the judgment of the court. The omission of the seal therefrom did not of itself mislead or injure defendant. The law does not require a copy of the writ to be served upon him. The error in not affixing the seal was an error on the part of an officer of the court acting in a ministerial capacity."

[1, 2] Generally· speaking it may be said with reference to what have been termed judicial process of a court that such are not absolutely void, unless issued without power in the court to award same, or when the court has not acquired jurisdiction to issue in the particular case; and where there exists a valid judgment, a writ of execution, though defective and irregular in failing to comply with some of the statutory requirements with reference to the form of the writ, is only voidable, and a sale thereunder cannot be attacked in a collateral proceeding. It is necessary to observe this distinction between the power of the court to issue the writ, and the failure to comply with some statutory direction with reference to the exercise of that power. To illustrate: In the case of Simmons v. Arnim, 110 Tex. 309, 220 S. W. 69, Judge Phillips, in discussing the validity of a judgment rendered without the appointment of a guardian ad litem for minors, used this language:

"These cases well illustrate how the failure of a court in the exercise of a valid judicial power to observe a direction of a statute which has only to do with the exercise of the power and not the power itself, may render its judgment voidable, but will not make it void."

Since 1842 the law has been that execution, must first issue to the county where the judgment was rendered, and upon a return thereof that no property can be found, or not sufficient to satisfy the judgment, execution may issue to another county. In numerous cases it has been held that execution issued in the first instance to a county other than that in which the judgment was rendered is irregular, but not void. Judge Wheeler in passing upon this question in Sydnor v. Roberts, 13 Tex. 616, 65 Am. Dec. 84, used language which forcibly illustrates the distinction we have referred to above:

"But there is a marked distinction between that which confers the power to do a certain act and the rules which direct and regulate the mode of its exercise. If the former be wanting, the act done is a nullity, and is to be taken as if nothing had been done; but if the latter be not strictly pursued, the acts done will not necessarily be void, or if void as to some persons and purposes, they will not necessarily be so as to all persons and for all purposes, but only as to the person who may have the right to avoid them, and will exercise that right in the proper manner and in proper time. This distinction was recognized by this court in the case of Howard v. North, 5 Tex. 306, where it is said: 'A clear distinction is recognized to exist between a sale without authority, and one where there is an' authority not strictly pursued; in the former case the sale is void; in the latter the title will pass, and the party injured by the irregular acts of the officer will be left to his remedy against him.' And again: 'The distinction between acts done by an officer without authority, and those done or omitted, in its irregular exercise, has been previously stated. The former are nullities, and confer no right; the latter do not affect the titles acquired under the acts of the officer unless. the purchaser be implicated.' "

We call attention to the fact that the statute requires the execution to give the date

of the judgment. In the case of Barnes v. Nix (Tex. Civ. App.) 56 S. W. 202, it was held that an execution reciting that judgment was rendered July 15, 1895, when the true date of the judgment was July 15, 1891, did not render the writ void.

The statute likewise requires the writ of execution to give the names of the parties to the judgment, but in Collins v. Hines, 100 Tex. 304, 99 S. W. 400, it was held that an execution which did not give the name of the plaintiff recovering the judgment in the body of the writ was not void, but merely irregular.

Again, the statute requires the execution to give the amount of the judgment, or the amount due thereon. In the case of Brown v. Bonougli, 111 Tex. 275, 232 S. W. 490, in passing on the validity of an order of sale which had been issued for an amount in excess of the amount allowed by the judgment, Judge Greenwood said:

"The judgment foreclosing the tax lien was not only valid, but seems to have been entirely regular. The attack on the sale is collateral. The order of sale was not without authority. The manner in which the clerk issued the * * * writ was erroneous and irregular. The sale under the valid judgment and the merely erroneous and irregular writ was not a nullity. Hence the title of the purchaser was good against collateral attack."

The Court of Civil Appeals cites and quotes from the case of Woolford v. Dugan, 2 Ark. 131, 35 Am. Dec. 52. The statute of that state required all process to be signed by the clerk officially and authenticated by the seal. The requirement that the writ shall be signed by the clerk is as "positive and peremptory" as the requirement of the seal. Yet the Supreme Court of Arkansas, in the case of Whiting v. Beebe, 12 Ark. 535, held that a writ of execution without the signature of the clerk is not void, but only voidable, and this case draws very clearly the distinction between original process and judicial process; thus demonstrating that the case of Woolford v. Dugan has no application to the question under discussion. From the case of Whiting v. Beebe we take the following:

"To the validity of this title, it is objected, first, that the original fi. fa. issued in favor of Gray & Bouton was void, because it was not signed by the clerk. The writ was valid, indorsed and perfect in every other respect.

"We have repeatedly held *original* writs void for this and like effects. The question comes up for the first time as to the effect of like omissions in *judicial* process, with regard to which there is said to be a marked difference. The first is connected with the inception of the suit. It is that by which the defendant is brought into court. It is the ministerial act of the clerk, before the court has gained jurisdiction of the party or the case. The latter is an act after the court has acquired full jurisdiction of the whole case and the parties, who are presumed to be present and privy to what transpires. In the latter class of cases, such defects as this have almost invariably been amended."

The court cites numerous cases where writs of fieri facias were amended by affixing the seal, and in some cases after levy and sale of the property, and adds:

"The test of writs, whether original or judicial, have almost invariably been held amendable."

It is hardly necessary to repeat that if the writ were void, and not merely voidable, no amendment could be allowed.

From what we have said, and as is evident from many other decisions, greater strictness is required with reference to citations and other original process than with executions. The statutory requirement as to the signature of the clerk and the affixing of the seal to citations is just as imperative as the statute with reference to executions; yet it has been held in numerous cases that a citation without the seal of the court is not void, but merely defective, and neither it nor the judgment based thereon can be set aside, except by appeal or writ of error, or in a direct proceeding for that purpose. Cartwright v. Chabert, 3 Tex. 261, 49 Am. Dec. 742; Moore v. Perry, 13 Tex. Civ. App. 204, 35 S. W. 839; Newman v. Mackey, 37 Tex. Civ. App. 85, 83 S. W. 33. Cases cited by the Court of Civil Appeals touching this particular question were appeals or direct proceedings, and clearly sustain the proposition we have stated.

The Court of Civil Appeals strongly relied upon the case of Insurance Co. v. Hallock, 73 U. S. (6 Wall.) 556, 18 L. Ed. 948, which counsel for defendant in error says "has never been deviated from by that court, and is still the leading American case on the subject." In a consideration of this case it must first be observed that the federal courts follow the rule adopted by the state courts on a question of this kind. This case originated in the state of Indiana. At the time it was decided (1868) the courts of that state had not passed upon a like question, and the Supreme Court of the United States followed the common-law rule, with its ancient strictness. At a much later date (1884), the Supreme Court of Indiana had occasion to consider this identical question and declined to follow the decision in Ins. Co. v. Hallock, but held directly to the contrary. This was the case of Rose v. Ingram, 98 Ind. 276, in which the court said:

"The first objection made to the complaint is that it shows that the execution, without a seal, was void, and not amendable, and in support thereof we are referred to the case of Ins. Co. v. Hallock, 6 Wall. 556, wherein it was held that a copy of an order of foreclosure, without a seal, under the statute of Indiana, was void, and conferred no authority upon the sheriff to sell.

"There was no question as to amendment in that case, and, indeed, if the instrument was absolutely void, there need have been no question as to amendment, for a void instrument is not amendable. Considerable confusion has crept into the books, and even in some of our own reports, over the use of the words 'void' and 'voidable.' But upon this question, in this State, we think the current of authority is in favor of holding that the execution was voidable, and not void.

"In the case of Doe v. Rue, 4 Blackf. 263, it was held that an execution was amendable after service.

"In the case of Hunter v. Burnsville Turnpike Co., 56 Ind. 213, it was held that an execution without a' seal was voidable, not void, and might be amended after a sale under it. In the opinion the following language is used: 'There are cases which hold, that writs without a seal are not void, but voidable only, and that they may be amended, after they have been served, by attaching the seal. We incline to follow that line of decisions which holds, that process, without the proper seal, is voidable only, and therefore amendable, as being more in consonance with the general spirit of the law, which regards substance more than form. Much hardship and injury might accrue to purchasers of property on execution, or their vendees, if the sale happened to be made on an execution to which the seal, by inadvertence of the clerk, had not been affixed, if the defect could not be amended by affixing the seal. So, too, a sheriff who arrests a party on criminal process, perfect in all respects except the seal, would be liable to an action of trespass, unless the defect could be amended."

After quoting numerous decisions, the court concludes:

"The foregoing cases fully establish the doctrine in this State that an execution without a seal, issued upon a regular judgment, is only voidable, and not void, and if not directly attacked in some proceeding to set it aside, acts done under it are valid against a collateral attack, the defect being amendable whenever presented."

It will thus be seen that if the question were now considered by the Supreme Court of the United States in a case originating in the state of Indiana, the decision of the Supreme Court, in line with the rule of the state courts, would necessarily be in conflict with the decision in the Hallock Case. This rule has been affirmed by the Supreme Court of Indiana in the more recent case of Warmoth v. Dryden, 125 Ind. 355, 25 N. E. 433, in which the court say:

"While there is much conflict in the authorities upon this subject, the better opinion is that the failure to attach the seal of the court to an execution does not render it void."

In Taylor v. Courtnay, 15 Neb. 190, 16 N. W. 842, being a comparatively recent case by the Supreme Court of Nebraska, that court used this language:

"Was the execution without a seal void? We think not. A large number of cases may be found, principally under the common law, where it is held that the absence of a seal, where one is required by the statute, will render the writ void. But why should it be void, if in proper form, issued by the proper officer and upon a valid judgment? It was issued by an officer of the court, and the neglect was the fault of such officer, and not of the parties."

Counsel and the Court of Civil Appeals rely upon the case of Choate v. Spencer, 13 Mont. 127, 32 Pac. 651, 20 L. R. A. 424, 40 Am. St. Rep. 425. However, the Supreme Court of that state, in the more recent case of Kipp v. Burton, 29 Mont. 96, 74 Pac. 85, 63 L. R. A. 328, 101 Am. St. Rep. 544, from which we have heretofore quoted, shows that the Choate Case was dealing with a summons and not an execution and clearly shows why that case and the case of Ins. Co. v. Hallock are no longer authority upon the question of the validity of an execution without a seal. The statute of that state is practically the same as in our state. In view of the clear and convincing manner in which the court has in that case cleared up the apparent conflict of decision and has stated the prevailing concensus of opinion makes us regret that we cannot quote more extensively therefrom. The court concludes the opinion by saying:

"These considerations lead us to the conclusion that the writ of execution in this case [which was without seal] was not void, but voidable."

Among the cases cited is Hall v. Lackmond, 50 Ark. 113, 6 S. W. 510, 7 Am. Rep. 84, by the Supreme Court of Arkansas. In that case it was held that where a writ of execution had been issued and levied, without the seal of the clerk issuing the same, the court may, on motion, amend the writ by directing the clerk to affix his seal; the court saying:

"The fact that the writ is capable of amendment shows that it is not void."

In view of the clear implication deducible from our own authorities and the great weight of authority in other states, where this particular question has been adjudicated in recent years, we are positive in the conclusion that the writ of execution in the present instance was not void for want of the seal, but was only subject to be set aside in a proceeding at the proper time.

[3] We next consider the objection urged that the execution was void because issued on Sunday. It is admitted that the date of the writ is Sunday but it does not necessarily follow that the writ was issued on that date. The return of the sheriff shows that it was received in his office at a later date. In the case of Bourn v. Robinson, 49 Tex. Civ. App. 157, 107 S. W. 875, it was held that the term "issue" means more than the mere clerical preparation and attestation of the writ, and requires that it should be delivered to an officer for enforcement.

But be that as it may, the issuance of the writ on Sunday would not make it void. While judicial acts are prohibited under the common law, and under our statutes, except in certain instances, yet the established rule is that unless expressly prohibited by statute ministerial acts performed on Sunday are valid. The statute in effect in 1868 provided:

"No civil suit shall be instituted, nor shall any process be had in any suit on Sunday, except in cases of attachment or sequestration." Paschal's Dig. art. 1424.

Undoubtedly the "process" referred to had reference to the original process in connection with the institution of the suit, as has been held with reference to our present statute, or one similar to it. Crabtree v. Whitesell, 65 Tex. 111; Fire Ins. Co. v. Shrader, 89 Tex. 40, 32 S. W. 872, 33 S. W. 112, 30 L. R. A. 498, 59 Am. St. Rep. 25; Schow v. Bank (Tex. Civ. App.) 40 S. W. 166.

There was error in holding the execution void because of this objection.

[4] With reference to the third objection that the execution was void because of insufficient description in the sheriff's return: If it be conceded that the description is such when taken in connection with inadequacy of price, that it might be brought into question in a direct proceeding (which we do not think is true), yet it cannot be taken advantage of in a collateral attack. Sanger Bros. v. Roberts, 92 Tex. 318, 48 S. W. 1. Besides, it has long been a settled rule in this state that—

"The endorsement of a levy and sale on the execution is not necessary to the validity of a purchaser's title acquired at the execution sale. The failure of the officer to make the proper endorsements cannot affect the rights of the purchaser acquired by virtue of the sale, when it is collaterally attacked, and not questioned in a direct proceeding to seasonably have the sale set aside." Holmes v. Buckner, 67 Tex. 110, 2 S. W. 452; Fitch v. Boyer, 51 Tex. 336; Bank v. Land Co., 60 Tex. Civ. App. 315, 128 S. W. 436.

It was error to sustain this objection.

[5] Intervener Hooks claimed title to the land under a deed from the heirs of Cave Johnson. The deed by the administrator of Collier to Johnson retained a vendor's lien to secure the payment of the purchase money. Plaintiff in error presents the proposition that intervener Hooks, who sought affirmative relief, could not maintain his suit without showing that the judgment for the original purchase money was paid, or without tendering the purchase money with interest. This proposition is not maintainable. When the administrator elected to sue Johnson and his sureties on the note for the purchase money, without a foreclosure or seeking to recover the land, he affirmed the contract, and title vested in Johnson. Having elected his course, it is presumed that he received full satisfaction of his debt by that course. Bartley v. Harris, 70 Tex. 181, 7 S. W. 797; Gardener v. Griffith, 93 Tex. 356, 55 S. W. 314; Rogers v. Green, 35 Tex. 730.

We recommend that the judgment of the Court of Civil Appeals and of the district court be reversed, and the cause remanded.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court. We approve the holding of the Commission of Appeals on the question discussed in its opinion.