Ocie Speer, of Austin, and Lon Curtis, of Belton, for relator.

James V. Allred, Atty. Gen., and F. O. McKinsey, Asst. Atty. Gen., for respondents.

PER CURIAM.

This is a mandamus proceeding, involving the right of the relator to the office of high-way commissioner.

An answer has been filed by the respondents which shows that the question of his right to the office is now before the Court of Civil Appeals for the Third district, upon appeal thereto by the relator from a judgment of the district court of Travis county ousting him from said office.

██ Since the district court of Travis county first obtained jurisdiction of the subject-matter of the instant application, and in the exercise of its power rendered judgment against the relator, and since the Court of Civil Appeals obtained jurisdiction of the appeal therefrom by an appeal duly taken by the relator, it is clear that this court cannot interfere with the exercise of the power conferred upon the Court of Civil Appeals until that court has gone to judgment and proper application has been made to this court for revision of its decree. The jurisdiction of the Court of Civil Appeals, in so far as the matters here presented are concerned, is adequate and exclusive, and it would be our duty to protect that jurisdiction, not to interfere with it. Cleveland v. Ward, 116 Tex. pages 1, 19, 285 S. W. 1063.

██ Aside from the above, mandamus does not issue except where the ministerial officer has abused his discretion and upon a clear showing that the relator is entitled to relief. 38 Corpus Juris, p. 659, § 199, p. 660, § 201; Common School Dist. v. Keeling, 113 Tex. pages 523, 527, 261 S. W. 364; Herring v. Houston Nat. Exch. Bank, 113 Tex. page 264, 253 S. W. 813. Neither condition obtains here. With the relator's right to the office in litigation, and upon appeal from a judgment against him, we cannot say that the comptroller has abused his discretion in declining to pay relator the compensation claimed by him, or that his right to the relief prayed for is clear.

The motion for leave to file is overruled.

## BEARDEN et al. v. TEXAS CO. et al.
### No. 1647—6087.

Commission of Appeals of Texas, Section A.
May 31, 1933.

McLean, Scott & Sayers, of Fort Worth, Kay & Akin, of Wichita Falls, Homer T. Bouldin, of Albany, and Lloyd G. Bouldin and Bouldin & Zively, all of Mineral Wells, for plaintiffs in error.

H. S. Garrett, H. R. Wilson, and Cantey, Hanger & McMahon, all of Fort Worth, Marshal & King, Fred Arnold, and McFarlane & McFarlane, all of Graham, Leslie Humphrey, Kilgore & Rogers, and Raymond M. Myers, all of Wichita Falls, W. B. Hamilton, Seay, Seay, Malone & Lipscomb, and A. S. Rollins, all of Dallas, E. G. Thornton, of Olney, S. A. Penix, of Graham, and J. R. Creighton, of Mineral Wells, for defendant in error.

CRITZ, Judge.

This is an appeal from a judgment of the district court of Young county, Tex. Originally three suits were filed in the same court; the three suits were consolidated and tried as one. There are many issues and parties which we shall not take the space to describe further than is necessary to make this opinion intelligible. The three original suits were as follows:

(1) Lee O. Bearden, one of the plaintiffs in error here, filed suit in the district court of Young county to recover title to an interest in 525 acres of land devised to him in the will of his father, A. L. Bearden, deceased. In order to establish his right to recover, this plaintiff sought by action in the nature of bill of review to set aside three judgments that had been theretofore rendered against him in the same court. These judgments were as follows: No. 8025 in which Ima Jean Raby and two others of his children had recovered title from him as heirs upon the theory that he was dead; No. 7494–B, which partitioned the mineral rights in the above-mentioned 525 acres of land between the beneficiaries under the will of A. L. Bearden, and their heirs and assigns; and No. 7473–B purporting to fix the rights of the devisees and their heirs and assigns and of Mrs. Annie E. Bearden, the surviving wife of A. L. Bearden and mother of Lee O.

Bearden, in the minerals in the above tract and decreeing a partition among the owners.

(2) A suit by E. B. Ritchie purporting to act as guardian of the estate of Mrs. Annie E. Bearden, a non compos mentis, a surviving widow of A. L. Bearden, deceased, to recover title to portions of the same tract of land and also seeking to vacate and annul the judgments in the above-mentioned causes Nos. 7494–B and 7473–B.

(3) A suit by Bessie Lee Griffin, formerly Bessie Lee Morgan, granddaughter and one of the devisees in the will of A. L. Bearden, deceased, joined by her husband, J. T. Griffin. In this suit Mrs. Griffin also seeks to set aside the two above-mentioned judgments, and to recover title to an interest in the same tract of land devised to her under the will of A. L. Bearden, deceased.

In all three suits above mentioned the plaintiffs sought to cancel and vacate two oil and gas leases on portions of the above 525-acre tract of land. One of these leases was made by R. E. Myers, as guardian of the estate of Annie E. Bearden, non compos mentis. This lease was also signed by R. E. Bearden and Pleasant Bearden, as executors of the A. L. Bearden estate. It was made to Miss Nancy E. McChesney. Another lease sought to be canceled was to the Panhandle Refining Company and Harry Hines, executed by R. V. Tidwell, receiver, appointed in the above-mentioned cause No. 7473–B. This lease was later acquired by Texas Company, one of the defendants in error.

The defendants in this suit are numerous, being the beneficiaries under the will of A. L. Bearden, deceased, their heirs and assigns, and certain other parties. We will not attempt to name them; it is sufficient to say that all proper and necessary parties to this suit are parties either as plaintiffs or defendants.

As above shown, the three above-mentioned suits were consolidated in the district court. All parties were required to replead. The case was tried with a jury, but at the conclusion of the testimony the district court instructed a verdict for the defendants. The verdict was returned as directed and judgment entered accordingly. The three plaintiffs in the district court prosecuted appeals to the Court of Civil Appeals at Fort Worth, which court in all things affirmed the judgment of the trial court. 41 S.W.(2d) 447, 452. The three district court plaintiffs bring error. For further statement we refer to and adopt the able and exhaustive statement contained in the opinion of the Court of Civil Appeals. We continue, however, to make such additional statement as is necessary for the discussion we shall indulge in.

It seems that in 1918 before oil and gas was discovered in Young and Archer coun-

ties, Tex., A. L. Bearden and wife, Annie Bearden, owned the 525 acres of land here involved in community. A. L. Bearden died on July 24, 1918, leaving a written will. The opinion of the Court of Civil Appeals states the contents of this will. It is sufficient to here state that the will bequeathed A. L. Bearden's one-half interest in the land in question to the surviving wife, Annie Bearden, for life, with remainder to certain named heirs of A. L. Bearden. Lee O. Bearden, a son, and Bessie Lee Griffin, a granddaughter, are two of the remainder beneficiaries.

It appears that the above will was duly probated in the county court of Young county, Tex., on October 7, 1918.

At the time of the death of A. L. Bearden, his surviving wife, Annie Bearden, was an old woman and hopelessly insane. Also she remained in such condition to her death. She is dead at this time, having died pending this appeal.

It appears in the record before us that on the same day the A. L. Bearden will was probated, October 7, 1918, R. E. Myers was appointed guardian of the person and estate of Mrs. Annie Bearden by the county court of Young county, Tex. The appointment is made as for a person non compos mentis. Mrs. Annie Bearden resided in such county at the time of this appointment. Myers served as guardian until October 7, 1924, when he resigned and Frank H. Wilson was appointed in his stead. The latter is still guardian of Mrs. Annie Bearden unless the Young county guardianship is void as is contended by E. B. Ritchie, the alleged guardian who brings this suit.

It appears that about July 16, 1929, Annie Bearden had removed to Palo Pinto county, Tex. On such date a complaint was filed against Annie Bearden in the county court of the last-named county, and she was duly tried by a jury in such court and found to be a person of unsound mind. Judgment was entered accordingly and E. B. Ritchie was appointed guardian of her estate. Acting under such Palo Pinto county appointment, Ritchie, as guardian, brings one of these consolidated suits.

The circumstances surrounding the appointment of the Young county guardian are as follows:

On August 28, 1918, Mrs. Lou Griffin and husband, T. L. Griffin, made application to the county court of Young county to be appointed guardians of the person and estate of Mrs. Annie Bearden, a person of unsound mind. This application was docketed as No. 656 on the probate docket of said court. Later, on September 2, 1918, R. E. Myers made application in the same cause to be appointed guardian of the person and estate of Mrs. Annie Bearden. This application stated that all parties at interest had agreed for Myers to be appointed.

The record further shows that notice of the Myers application was issued, but served by publication only. No personal service was had on Mrs. Annie Bearden.

On October 7, 1918, the county court of Young county entered an order and judgment appointing R. E. Myers guardian of the person and estate of Annie Bearden, a person of unsound mind. This order shows upon its face that no personal service was had on Mrs. Bearden. It is also shown by evidence undisputed in the record that Mrs. Bearden was not personally present at the trial and was not represented by counsel or guardian ad litem. Also the Court of Civil Appeals finds and holds that no jury trial was had on the issue of insanity. After his appointment, as above shown, Myers, purporting to act as guardian of the estate of Mrs. Annie Bearden, a person of unsound mind, executed the above-mentioned oil and gas lease covering Mrs. Bearden's interest in the above 525 acres of land to Miss Nancy E. McChesney. All proceedings for the making of this lease were regular and in conformity with law, not taking into consideration any irregularity or illegality which may have occurred in the appointment of Myers as guardian.

Ritchie, the guardian appointed by the county court of Palo Pinto county, contends that the order of the county court of Young county appointing Myers as guardian, was and is absolutely null and void. Ritchie further contends that since the order appointing Myers as guardian was and is void, all subsequent proceedings had thereunder, including the lease to Miss McChesney, are and always have been null and void.

■ In connection with the above, Ritchie contends further that under the Constitution and laws of this state any judgment attempting to appoint a guardian for the person or estate of a non compos mentis or insane person without an actual jury trial first being had on the issue of insanity is in all events utterly null and void and subject to collateral attack. We disagree with this contention. On the other hand, we think that where article 4123, R. C. S. of Texas 1925, and relating statutes, are properly followed and service and notice had on the person alleged to be non compos mentis or insane, as provided by articles 4114, 4115, and 4116, R. C. S. 1925, a guardian appointed without an actual jury trial is legal and valid. Of course, under subdivision 4 of article 4123, and under the Constitution, it would be error to refuse a jury trial if one should be demanded. In this connection we further hold that the procedure provided by article 4123, supra, and relating statutes, is not exclusive, but is merely cumulative of the procedure provided by chapter 12 of the same title 69 (article 4267 et seq.).

■ Again referring to the questions of the issuance and service of notice and citation,

in proceedings to appoint a guardian for an insane person under article 4123, and relating statutes, we call attention to the fact that there is no direct statute providing for the issuance and service of notice or citation in such proceedings, but articles 4114, 4115, and 4116, supra, provide in detail how notice and citation shall be issued and served in guardianship proceedings for minors. Article 4274 expressly provides: "Each provision of this title relating to the guardianship of the persons and estates of minors shall apply to the guardianship of the persons and estates of persons of unsound mind, and habitual drunkards, in so far as the same are applicable."

It appears that when articles 4114, 4115, and 4116 are read in conjunction with article 4274, supra, the method of issuing and serving notice in guardianship proceedings for the appointment of a guardian for persons of non compos mentis are fully defined. In other words, article 4274 requires that notice and citation shall be issued in cases involving insanity in the same manner as in cases involving minors.

Ritchie further contends that the order appointing Myers as guardian was and is utterly void because it appears on the face of said order that no personal service was had on Mrs. Annie E. Bearden, who was an aged woman, and because the undisputed record shows that she was not present at the trial, had no opportunity to know thereof, had no guardian ad litem or other representative thereat, and was never given any chance to have the issue of her insanity or any other fact issue determined by a jury, or even by the court. In this connection it is particularly contended that she was never given a chance to demand or waive a jury. These matters present questions of some difficulty, but under the view we take of this case it will not be necessary to decide them.

It appears from the statement we have made that Ritchie seeks to cancel and annul the McChesney lease on the grounds we have stated. It also appears that he seeks in this cause to set aside and vacate the judgment in causes Nos. 7494–B and 7473–B theretofore rendered by the district court of Young county, Tex. It is shown by the record that both of such judgments were rendered after final trial in open court and were never appealed from.

We shall not attempt to go into all of the details leading up to and involved in the rendition and entry of the two judgments above mentioned. They are fully and exhaustively set out in the opinion of the Court of Civil Appeals. We will later quote that opinion relating to the judgment in cause No. 7473–B.

It appears that after the lease was made to Miss McChesney, she filed an application in the county court of Young county, Tex., in cause No. 655 on the probate docket of that court, being the cause in which the will of A. L. Bearden was probated, and in which his estate was being administered, to partition the mineral rights in the above 525 acres of land held by her under the above-mentioned lease between herself and all other parties interested in such land. This case was tried in the county court, where a partition was ordered. The case was appealed to the district court where it became cause No. 7494–B. It was tried de novo in the district court, where a partition was also ordered and had.

Ritchie and the other plaintiffs attack the judgment in cause No. 7494–B and the proceedings had thereunder and contend that such judgment and proceedings are absolutely null and void. In this connection Ritchie shows that the validity of Miss McChesney's lease was not admitted, but contested in the county court and an issue of title thus raised. It is then contended that since an issue of title was involved the county court had no jurisdiction to try the partition proceedings. It is then contended by Ritchie et al. that if the county court had no jurisdiction to determine the validity of McChesney's title, the district court, as an appellate tribunal, acquired none on appeal. It is then contended that the judgment in cause No. 7494–B is absolutely null and void, because neither the county court, as the court of original jurisdiction, nor the district court, as the court of appellate jurisdiction, had potential jurisdiction over the subject-matter of the suit. In this connection we pause to note that both in the county court on original hearing, and in the district court on appeal, the defendants vigorously contested the validity of the McChesney lease, and her title thereto, and contested the jurisdiction of both courts over the subject-matter of the suit. If the issues of this appeal depended on the validity of the judgment in cause No. 7494–B, we would again be confronted with questions of extreme difficulty; but, as in our opinion the judgment in cause No. 7473–B, is res adjudicata of all questions involving the validity of the McChesney lease, we do not decide the validity of the judgment in cause No. 7494–B.

The proceedings had in cause No. 7473–B are set out in great detail in the opinion of the Court of Civil Appeals. We quote from that opinion as follows:

"During the month of June, 1924, a discovery well was brought in about 1,000 feet northeast of the tract of land in controversy, and soon thereafter a line of other producing oil wells was drilled near the north and east boundaries of that tract, all producing oil in paying quantities about 150 feet distant from the Bearden boundaries. In order to avoid the drainage of oil from the tract in controversy, an urgent necessity arose for the immediate development of that tract by the

drilling of wells thereon, and in order to meet that emergency, and to insure the validity of oil leases which might be necessary to accomplish that end, the suit in cause No. 7473–B was instituted in the district court of Young county on July 23, 1924, in the names of the executors and all the devisees under the will of A. L. Bearden, deceased, including Lee O. Bearden, and their heirs and assigns, as plaintiffs, against Nancy E. McChesney and R. E. Myers, as defendants, praying for appointment of a receiver vested with authority to execute oil leases on the land in controversy, and seeking a cancellation of the McChesney lease, on the ground that the order appointing Myers guardian and the lease executed by him were void for lack of jurisdiction in the county court to appoint him as guardian until Mrs. Annie E. Bearden had first been adjudged insane under the statutes referred to above.

"On August 25, 1924, the court entered an order granting Annie Bearden, through Frank Wilson as next friend, leave to intervene in the suit; and on the same day a plea of intervention was filed by Annie Bearden, acting through Frank Wilson as her next friend, adopting the pleadings of the plaintiffs in the suit, and likewise praying for a cancellation of the McChesney lease and of the orders of the county court appointing Myers guardian of the estate of Mrs. Annie Bearden and ordering and approving the lease made by him to Miss McChesney.

"R. E. Myers, for himself individually, also filed an answer to plaintiffs' petition, alleging his appointment and qualification as guardian and his actions thereunder all with the knowledge and consent of the plaintiffs; and that he had no individual interest in the lease. Also that he as guardian had contested the validity of the McChesney lease in the proceedings in the county court and district court by Miss McChesney to partition the mineral rights in the land in controversy, referred to above, in which judgment was rendered in favor of Miss McChesney.

"Miss McChesney also filed an answer to plaintiffs' petition in which she pleaded the validity of the appointment of Myers as guardian and the orders authorizing and approving her lease. And by way of cross-action, she alleged the validity of her lease and sued for removal of plaintiffs' claims as a cloud upon her title, as against each and all the plaintiffs, naming them, and also against Mrs. Annie Bearden and against R. E. Myers as her guardian.

"Prior to the institution of that suit, and about the year 1915, Lee O. Bearden deserted his wife and family and left the state and never returned thereto to reside therein until about the month of August, 1928. At the time of the institution of the suit, and for more than seven years prior thereto, his whereabouts were unknown to his family or any of the other plaintiffs named in the suit, although they had made diligent search in order to communicate with him and have him join as plaintiff in the suit, but without success. The last tidings of him was a letter written by him to his sister, Mrs. Hattie Claiborne, on September 1, 1918, while in a government hospital in Arkansas, concerning his father's estate, reading as follows: 'You ask me if I were willing for Will Kennedy to act as administrator. I don't suppose you all could get a better man and what you all do will be all right with me. Tho I think it would be better to get some one outside of the family or make them give bond, as tho they were an outsider.'

"Having been unable to locate him, the other parties plaintiffs included him as one also, for his benefit as well as their own.

"R. E. Myers, as guardian of the estate of Annie E. Bearden and in her behalf, also intervened in the suit. After the suit was filed, the court by separate order appointed F. V. Hinson as next friend of Annie E. Bearden to represent her in the suit, and he, as her next friend, filed a plea of intervention in her behalf. And Miss McChesney filed a cross-action for a validation of her lease, in addition to a plea of general denial of plaintiffs' petition. A final judgment was rendered in that case, from which no appeal was ever prosecuted. The judgment so rendered recites the appearance of all the plaintiffs in this suit, naming them, including Lee O. Bearden, and all other parties, in person and by attorneys, and the appearance of R. E. Myers, individually and as guardian of the estate of Annie E. Bearden, a person of unsound mind, and of Annie E. Bearden, in person and by and through her next friend Frank Wilson, and Bessie Lee Griffin, a minor, by her next friend Frank Wilson and also by Mrs. Lou Griffin, trustee of her estate, and by their attorneys; also the appearance of defendant Annie E. Bearden, by her duly appointed guardian ad litem, F. V. Hinson. Following the recitals of such appearances of the parties, the judgment embodies numerous findings, including the following, in substance:

"(a) That R. E. Myers had been duly and legally appointed guardian of the estate of Annie E. Bearden, non compos mentis, by the county court of Young county, and had duly qualified as such.

"(b) That theretofore Annie E. Bearden had been duly and legally adjudged a person of unsound mind by the same court.

"(c) That R. E. Myers, as guardian, had been duly authorized to make and execute to Nancy E. McChesney the oil lease claimed by her and for which she had paid a reasonable consideration.

"(d) That Annie E. Bearden and the plaintiffs consented to and acquiesced in the adju-

dication of insanity of Annie E. Bearden and the appointment of R. E. Myers as guardian of her estate, and had held out Myers as such guardian to the public and to Nancy E. McChesney, who relied thereon.

"(e) That the money paid by Nancy E. McChesney for said lease was by Myers, the guardian, turned over to her estate, and plaintiffs received benefits thereof, and for six years Myers acted as such guardian with the knowledge and consent of Annie E. Bearden and all plaintiffs in the case, all of whom are now estopped from denying the validity of the judgments and decrees by which Annie E. Bearden was adjudged insane and R. E. Myers was appointed as her guardian; and are also estopped from denying the validity of the leases executed by Myers as such guardian.

"(f) That the partition of the oil and gas rights in the land in controversy made by the county court of Young county upon the application of Nancy E. McChesney in the administration of the estate of A. L. Bearden, deceased, and the partition made by the district court in cause No. 7494–B upon appeal from the county court judgment, were in all things valid and legal, and that Nancy E. McChesney is entitled upon her cross-bill to have her title to oil and gas rights under her leases, and to the lands set apart to her in said partition proceeding, quieted as against all parties to the suit, naming them, including Lee O. Bearden, and that all those parties take nothing as against her.

"(g) Following the foregoing findings, the judgment embodies a specific description of the lands, the mineral rights in which were covered by the McChesney lease and theretofore set apart to her in the foregoing partition proceedings; the property so set apart being referred to as lots Nos. 1, 4, and 5, according to the plat made by the commissioners of partition, and also a like description of lots 2, 3, and 6, the mineral rights in which had been set apart to the plaintiffs in cause No. 7494–B in the prior partition proceedings; the oil and gas rights so set apart to those plaintiffs being subject to the life estate of Annie E. Bearden, which had been conveyed by her guardian to Nancy E. McChesney.

"(h) Then follow further findings that all parties to the suit, for the purpose of speedily settling all controverted issues of title between them and finally ending those controversies, had agreed to a further division and partition of the mineral rights theretofore set apart to them, by the terms of which Nancy E. McChesney had relinquished to the plaintiffs all her mineral rights in lot No. 5, theretofore allotted to her in the partition, and also all her rights, title, and interest in and to the estate of Annie E. Bearden in the minerals in lots 2, 3, and 6, which had theretofore been set apart to the plaintiffs in the

partition proceedings; which said agreement and settlement was then duly approved by the court as fair and reasonable to all parties concerned; and judgment was rendered fixing the titles of the respective parties in accordance with that agreement.

"(i) Then follows a decree of partition in accordance with that agreement and in which the mineral rights which were set apart to the plaintiffs, including Lee O. Bearden, were decreed to be vested in them in the proportions fixed by the will of A. L. Bearden.

"(j) There was a further finding that all parties were entitled to a partition of the property, but that the same was not susceptible of partition in kind, and that in order to make the same, a sale of the whole was necessary.

"(k) Then follows the appointment of R. V. Tidwell as receiver to sell the interest so set apart to the plaintiffs and make report of his action to the court, to the end that the proceeds of such sale be divided among the plaintiffs according to their respective interest. (However, no sale was ever made by the receiver.)

"(l) There was a further provision denying to Annie E. Bearden the right to open oil and gas wells on the property so set apart to the plaintiffs or to interfere with the plaintiffs' possession of the same by reason of her life estate therein.

"(m) Then follows findings of the necessity for an immediate development of the property so set apart to the plaintiffs for oil and gas, in order to avoid drainage therefrom through wells drilled on property adjacent thereto; and in order to accomplish that purpose it was necessary to appoint a receiver to take charge of said tracts and explore the same for oil, and R. V. Tidwell was appointed receiver, and he duly qualified as such by taking the oath and giving the bond fixed by the court, with further power to execute oil and gas leases on that property and to collect the rents and revenues arising therefrom.

"(n) There was a further finding that Annie E. Bearden was 84 years old and was entitled to receive $500 from oil and gas leases to be so made by the receiver.

"On September 20, 1924, the district court, in cause No. 7473–B, approved a lease by Tidwell, the receiver, to the Panhandle Refining Company and Harry Hines, of 262½ acres of land out of the tract in controversy. The consideration for said lease was a payment of a one-eighth royalty of all the oil produced on the land and in addition thereto $68,500 in cash, and $51,375 out of the lessees' fourteen-sixteenths of the oil produced from the land, which was the lessees' portion after deducting from the total a one-eighth royalty. The lease so taken was duly filed for record on September 20, 1924. The lessees assigned

the lease to the Texas Company, a corporation, who is one of the defendants in the suits now before us, and that company proceeded at once to develop the lease so taken and produced therefrom large quantities of oil. On the same day the lease was executed, Tidwell tendered his resignation as receiver, which was forthwith accepted, and immediately Frank H. Wilson was appointed receiver to succeed him. Wilson qualified as such by filing the bond fixed by the court, which was duly approved on September 20, 1924. He took over from Tidwell the money and contract which he had received from the lessees as consideration for the lease, and thereafter collected from the Texas Company the royalties and the additional oil provided for in the lease as the same was produced. On the 22d day of September, 1924, all the devisees named in the will of A. L. Bearden, other than Annie E. Bearden and Lee O. Bearden, executed a written contract ratifying and confirming the lease so made by Tidwell, as receiver, and R. E. Bearden and Pleasant Bearden also executed it as executors of the estate. That instrument also purported on its face to bind the signers as expectant heirs and devisees of Annie E. Bearden, the mother, which apparently was intended as a warranty covering rights that might be thereafter acquired from their mother by descent or devise; and it also included recitals that the signers recognized 'the validity of the guardianship proceedings on the estate of said Annie E. Bearden, non compos mentis, and the validity of the judgment in cause No. 7494–B, above mentioned upon the said Annie E. Bearden and her heirs at law.' "

A reading of the above statement demonstrates that cause No. 7473–B was an original suit filed in the district court of Young county, Tex. In that suit every person and party who had any interest in this 525 acres of land were made parties in some way. In that suit the McChesney lease was attacked from every angle, and on every ground that is here urged to invalidate it. Mrs. Annie E. Bearden appeared by Myers as her guardian; she also duly and legally appeared by next friend and by her pleadings in both instances contested the McChesney lease on every ground that is here urged against it. The district court of Young county had jurisdiction of the person of Mrs. Annie E. Bearden and the subject-matter of the suit. Such court also had jurisdiction of all other parties interested in the land and the minerals therein. The case was tried in due form of law and a final judgment rendered and entered which in effect found and adjudged that the McChesney lease was valid and binding. In our opinion this judgment is res adjudicata of every attack here made on the McChesney lease, and the partition

concerning the same. It may be that such judgment was erroneous in some particulars; we do not decide that question; neither are we concerned with it. This judgment was not appealed from and it is certainly not void.

We have read and carefully considered the very able and exhaustive opinion of the Court of Civil Appeals, speaking through Judge Dunklin, relating to the appeals of Lee O. Bearden and Bessie Lee Griffin. Also we have read and carefully considered the very able briefs and arguments filed by counsel representing such parties, and in our opinion the Court of Civil Appeals has correctly disposed of their appeals, and for correct reasons given. No good purpose can be served by further discussion here.

We recommend that the judgments of the Court of Civil Appeals and district court be both affirmed.

CURETON, Chief Justice.

Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.