**SNELL et al. v. KNOWLES et al.**

No. 4639.

Court of Civil Appeals of Texas. Texarkana.

July 24, 1935.

Rehearing Denied Sept. 12, 1935.

J. R. Hill, Geo. G. Clough, M. E. Clough, and Jno. T. Gano, all of Houston, and Tom L. Sessions, of Dallas, for plaintiffs in error.

Edwin Lacy, of Longview, Thompson, Mitchell, Thompson & Young, and P. G. McElwee, all of St. Louis, Mo., Campbell & Leak and Lee, Porter & Latham, all of Longview, Pritchett Harvey, of Houston, and Wm. Hodges, of Texarkana, for defendants in error.

JOHNSON, Chief Justice.

This suit is one in trespass to try title and to cancel a judgment. The land consists of 65 acres of a 78-acre tract, a part of the Allen Norris survey in Gregg county. It was formerly owned by John Hughey, who, it is agreed, was the common source of title. It was conveyed by John Hughey to Richard Fortson and his wife, Lizzie. Fortson, on December 8, 1900. Lizzie Fortson died intestate in 1911, leaving four children, Marshall Fortson, Frank Fortson, Ethel Fortson, and Sam Fortson. Sam Fortson died in 1913, intestate, and unmarried. February 27, 1917, Richard Fortson conveyed to J. A. Knowles his community one-half undivided interest in the 78 acres. Later in the year 1917, Richard Fortson died, leaving a will devising the remainder of his interest, being that inherited from his son, Sam Fortson, to his daughter, Ethel Fortson Armstrong. January 8, 1918, J. A. Knowles conveyed the one-half interest acquired from Richard Fortson to J. W. Armstrong and wife, Ethel Fortson Armstrong, reserving a vendor's lien against the property. The deed recited a consideration of $20 cash and five vendor's lien notes of $105 each, payable to J. A. Knowles, due November 1918, 1919, 1920, 1921, and 1922, respectively. February 3, 1919, Frank Fortson conveyed his undivided interest to J. W. Armstrong and wife, Ethel Fortson Armstrong. The consideration for this conveyance consisted of $100 cash and two vendor's lien notes each in the sum of $87.50, due October 15, 1919, and 1920, respectively. The cash payment was furnished by J. A. Knowles. The two vendor's lien notes were transferred and their payment guaranteed by Frank Fortson to J. A. Knowles in payment of their face value. By agreement, a parol partition of the 78 acres of land was had whereby 13 acres off the south side of the tract was set aside to Marshall Fortson as his interest in the land in consideration of which Marshall Fortson released whatever interest he had in the remaining 65 acres to the other cotenants, J. W. Armstong and wife, Ethel Fortson Armstrong. They resided on and farmed the 65 acres so set aside to them, and incurred a number of community debts due J. A. Knowles, in addition to the purchase price of the land. Some time in the year 1919, J. W. Armstrong abandoned his wife and the land and left the state. His residence remained unknown until he appeared and filed his petition of intervention in this suit in June, 1932. On December 30, 1919, Ethel Fortson Armstrong secured a divorce from J. W. Armstrong. She cultivated a crop on the land during 1920. In the fall of that year, she turned the place back to Mr. Knowles, informing him that she could not pay the place out, and that if she did remain and pay for the place, that her former husband might return and claim one-half of it. It appears that Mr. Knowles accepted the place back, and thereupon rented it to one Harrison Fortson, a relative of Ethel Armstrong. At this time Ethel conveyed to Mr. Knowles the interest which she had inherited in the land, the consideration of which being the cancellation of some personal indebtedness and the payment by J. W. Knowles to

her of the balance in cash. No written conveyance was executed by Ethel to J. W. Knowles of the one-half interest which Mr. Knowles had conveyed to her and her husband, nor of the one-sixth interest which Frank Fortson had conveyed to her and her husband, and against which interests Knowles held the vendor's lien. It appears to have been their belief that joinder of her husband, J. W. Armstrong, was necessary to effect a written conveyance of the incumbered interests. After abandoning the property and turning it over to Mr. Knowles, Ethel left the community and moved to Houston, Tex. Continuously since 1920, J. A. Knowles has retained possession of the land, cultivating, using, and claiming it, and paying all taxes thereon before delinquency. It is also shown that he made valuable improvements on the land. J. W. Armstrong not having returned to the community to execute a written conveyance of the land, and after having consulted an attorney with respect to perfecting his title, J. A. Knowles filed suit to foreclose the vendor's lien notes. That suit was filed in October, 1923, against J. W. Armstrong, Ethel Armstrong, and Frank Fortson. The defendants were cited by publication upon the affidavit of W. C. Shoults as attorney for J. A. Knowles. February 12, 1924, judgment was rendered in the suit against the defendants for the amount of the notes, accrued interest and attorney fees amounting to $1,031.75, and for foreclosure of the vendor's lien on the land. The land was sold by the sheriff and was purchased by J. A. Knowles on a bid of $1,000. The sheriff executed a deed conveying the land to Knowles. This deed was recorded November 6, 1926, in the Deed Records of Gregg county. October 8, 1930, J. A. Knowles, joined by his daughter, Mrs. Vivian K. Bussey, and husband, J. E. Bussey, executed a mineral lease on the land to Shell Petroleum Corporation. The terms of the lease were those ordinarily contained in the standard form in use in Texas. The consideration was $375 in cash and one-eighth of all oil and gas produced and saved from the premises by the lessee.

November 5, 1931, Ethel Fortson Armstrong Snell filed this suit against J. A. Knowles in trespass to try title, claiming to own the entire premises. November 12, 1931, she filed an amended petition bringing into the suit Vivian Bussey and the Shell Petroleum Corporation, also J. W. Armstrong and Frank Fortson. In this amendment she claimed to own seven-twelfths interest in the land, and sought to vacate the above mentioned judgment rendered in favor of J. A. Knowles foreclosing his lien on the land. It appears that on September 17, 1924, Ethel Fortson Armstrong was married to Charles Snell. Snell did not join her in her petition, and he was not made a party defendant. December 14, 1931, Ethel obtained a divorce from Charles Snell. June 6, 1932, J. W. Armstrong filed a plea of intervention, claiming an interest in the land. June 20, 1932, Frank Fortson filed an answer adopting the pleadings of Ethel Snell. October 27, 1932, Charles Snell intervened, claiming an interest in the oil produced from the land prior to his divorce from Ethel.

The defendant Knowles answered by general denial, and specially pleaded several statutes of limitation, 2, 3, 4, 5, and 10 years; laches and stale demand. The Shell Petroleum Corporation likewise pleaded the several statutes of limitation, laches and stale demand, and innocent purchaser.

The cause was tried to the court without a jury, and judgment rendered for the defendants, from which Ethel Snell, J. W. Armstrong, and Frank Fortson have prosecuted a writ of error.

■ No request having been made therefor, the trial court filed no specific findings of fact and conclusions of law. Therefore, in our review of the record, it is to be assumed that all controverted issues were resolved by the trial court in support of the judgment which he rendered. In Smith v. Patterson (Tex.Civ. App.) 294 S.W. 984, 986, the rule is stated: "Every presumption not inconsistent with the record will be indulged in favor of the judgment, and any doubts as to the facts raised by the evidence and any view of the law which the trial court could have applied under the pleadings and evidence in the case will be resolved in support of the judgment."

■ Appellant's right to recover the land sued for in this case depends upon the success of their effort to vacate or have declared void a judgment rendered February 12, 1924, in the 71st district court of Gregg county, Tex., in cause No. 4337 in favor of J. A. Knowles and against appellants, J. W. Armstrong, Ethel Fortson Armstrong Snell, and

Frank Fortson, foreclosing the vendor's lien notes above mentioned on the land which appellants sue to recover in this case.

The judgment is regular on its face and duly recites service of citation by publication, and deals with a subject-matter over which exercise of the trial court's jurisdiction had been invoked. Therefore, it is not void, even if found to be erroneous. Crow v. Van Ness (Tex.Civ. App.) 232 S.W. 539; Bearden v. Texas Co. (Tex.Com.App.) 60 S.W.(2d) 1031. Appellees contend that appellants' suit is a collateral attack on the judgment, and that we should review the record under the law applicable to a collateral attack. Appellees' contention is based upon the fact that the judgment in cause No. 4337 was rendered in the district court of Gregg county, and that appellants' suit to vacate it was filed and tried in the 124th district court of Gregg county. Appellants contend, in effect, that the act of the Forty-Second Legislature, First Called Session, chapter 23, page ·37 (Vernon's Ann. Civ. St. art. 199, subd. 124) creating the 124th district court, by conferring upon the two courts concurrent jurisdiction within the limits of Gregg county, authorizes judgments rendered by the 71st district court to be attacked in the 124th district court. We do not think that this act of the Legislature has the effect of superseding the rule requiring suit to vacate a judgment to be brought and tried in the court in which the judgment was rendered. But it appears from a supplemental transcript before us that after this suit was filed in the 124th district court and after answers had been filed by appellees, and upon a joint motion made by all parties, the cause was transferred to the 71st district court. It is thought that the joining in this motion by all the parties was such voluntary action as to invoke the jurisdiction of the 71st district court, and that the transfer of the case from the 124th district to the 71st district upon the motion was tantamount to a filing of the case in that court. Ross v. Drouilhet, 34 Tex.Civ.App. 327, 80 S. W. 241. The 71st district court, having thus acquired jurisdiction over the case, was authorized under the act of the Legislature last above cited to transfer the suit, which it did, to the 124th district court, and which transfer conferred jurisdiction upon the 124th district court to try it, as a direct attack. The legislative act mentioned, in part, provides: "And when said case or cases are transferred, the Court to which transfer is made shall have the same right, authority and jurisdiction to try and finally dispose of same as was originally had by the Court making such transfer." Section 13. See Citizens' Bank v. Brandau (Tex.Civ.App.) 1 S.W.(2d) 466.

██ Appellants' first ground of attack upon the judgment in cause No. 4337 is as to the sufficiency of the citation by publication. It is contended that the affidavit upon which the citation was issued was fraudulently procured, in that, it is contended, the residence of Ethel Armstrong, now Ethel Snell, defendant in that suit, was known to plaintiff, J. A. Knowles. The affidavit is in proper form and was signed and sworn to by W. C. Shoults, as attorney for plaintiff, J. A. Knowles. Shoults is now dead. There is no claim that Shoults knew Ethel Armstrong's residence, or that he swore falsely in the affidavit. The particular contention being that plaintiff Knowles knew where Ethel Armstrong resided at the time, and that the law will attribute such knowledge to his attorney. The statute, R. S. art. 2039, provides: "Where a party to a suit, his agent or attorney, shall make oath when the suit is instituted, or at any time during its progress, that any party defendant therein is a non-resident of the State, or that he is absent from the State, or that he is a transient person, or that his residence is unknown to affiant, the clerk shall issue a citation for such defendant," etc.

In Kitchen v. Crawford, 13 Tex. 516, 521, it is said: "But it is not the making of the affidavit, but the truth of it, that is, the existence in fact of the assumed condition, which enables the Court to acquire jurisdiction over the person of the defendant by publication."

Though the statute only expressly provides that the residence of the defendant shall be "unknown to affiant," it is thought that a plaintiff may not avoid the purpose and spirit of the statute by procuring his agent or attorney to make affidavit of his want of knowledge of the residence of the defendant, when such residence is known to the plaintiff. The plaintiff may not thus fraudulently procure constructive service. Liebhart v. Lawrence, 40 Utah, 243, 120 P. 215. But the affidavit was sufficient on its face. Frick-Reid

Supply Corporation v. Meers (Tex.Civ. App.) 52 S.W.(2d) 115. The burden was upon appellants in the trial court to prove the alleged fraud of Knowles in its procurement. The issue was one of fact. In support of the judgment, it is to be assumed that the trial court found against appellants upon this fact issue. A finding that J. A. Knowles did not know, and after exercise of reasonable diligence, was unable to learn of the residence of Ethel Armstrong at the time the suit was filed, is not without sufficient support of evidence in the record. The affidavit was made in January, 1924. J. A. Knowles testified to the effect that the residence of Ethel Armstrong was unknown to him after she left the community in 1920, until he received a letter from her in 1931; that before instituting the foreclosure suit in 1924, he made inquiry of her nephew, Harrison Fortson, and was unable to learn of her residence. Harrison Fortson testified to the same effect. Ethel Armstrong testified that she lived at Houston, Tex., at that time, and that she had resided in Houston ever since she left Gregg county in 1920, and that J. A. Knowles knew the place of her residence. It is the contention of appellants that the finding of the trial court on the issue in favor of J. A. Knowles cannot be sustained because appellants introduced in evidence a letter purported to have been written by J. A. Knowles to Ethel Armstrong, 814 Oxford street, Houston, Tex., on October 17, 1921, and that Knowles did not after the letter was introduced in evidence go upon the witness stand and deny its genuineness. It appears in the record that Mr. Knowles was present at a part of the trial, but in ill health; that his condition became such that during the trial he was unable to further attend court, and that his testimony was introduced from depositions given by him several months prior to the trial. Assuming that the letter was genuine and that it established as a fact that Knowles knew Ethel Armstrong's residence at the time it was written in 1921, such fact would be of probative force in support of a finding that he knew, or by the exercise of due diligence could have known, her residence in 1924. But that he may have known her residence in 1921 does not raise a conclusive presumption that he retained such knowledge in his mind until 1924, nor would such prevent the trial judge from accepting Knowles' testimony to the contrary on the

trial of this case. Appellees point out facts in the record from which the trial judge was authorized in believing the letter to be a forgery. The only testimony of its genuineness was that of Ethel Armstrong, an interested witness. Her testimony on other issues had been contradicted by disinterested witnesses. The admitted genuine signature of J. A. Knowles to the oil and gas lease to Shell Petroleum Corporation was in evidence before the court. It does not appear to be the same signature as that on the letter. The language used in the letter is not such as would ordinarily be used in the attending circumstances. There is no circumstance which would indicate that J. A. Knowles had a motive to conceal knowledge of the pendency of the suit from appellant, or any reason for wanting to procure service by publication rather than personal service. The debt was as much as the value of the land, and it appears that Knowles bid practically the amount of the judgment on the land, and it does not appear that appellants possessed other property from which Knowles might have expected to satisfy any excess judgment. Ethel Armstrong was insolvent when she left the country in 1920. Her circumstances in life were such that it would not reasonably be expected that her condition financially would improve. The parties were before the trial court, who heard their conflicting testimony and all the surrounding circumstances of the case, and his finding against appellants on the issue cannot be said to be without proper support in the evidence.

■ Appellants also assert that the citation is shown to have been issued prior to the filing of the affidavit. The affidavit is dated January 9, 1924. It bears the clerk's file mark of date January 10, 1924. The citation is dated January 9, 1924. The sheriff's returns on the citation show that it was delivered to him for service on January 10, 1924. The term issue as used in the statute means more than the mere clerical preparation, dating, and attestation of a writ, and includes the act of delivery to an officer or to some one for delivery to him for service. "A process is not 'issued' until it is sent forth from the clerk's office under his sanction and authority and given to an officer, or to some one else to give to an officer, for the purpose of being served." Ferguson v. Estes & Alexander (Tex.Civ.App.) 214 S.W

465; Bourn v. Robinson, 49 Tex.Civ.App. 157, 107 S.W. 873; Houston Oil Co. v. Randolph (Tex.Com.App.) 251 S.W. 794, 799, 28 A.L.R. 926; 33 C.J. § 24, p. 828; 21 R.C.L. 1265. Therefore, it is not shown that the citation was issued prior to the filing of the affidavit.

Appellants' second ground of attack upon the judgment in cause No. 4337 asserts that it is not a final judgment, for failure to dispose of all the issues in the case. It is contended that the judgment shows on its face that the vendor's lien reserved against an undivided one-sixths interest in the land, in the two notes for $87.50, each, dated February 3, 1919, was not foreclosed. The pertinent provisions of the judgment recite:

"That defendants, William Armstrong and Ethel Armstrong, executed four certain vendor's lien notes for the sum of $105.00 each, payable to plaintiff herein, and that they executed two vendor's lien notes for the sum of $87.50 each, payable to defendant, Frank Fortson, who transferred same to J. A. Knowles, plaintiff herein, and guaranteed to him the payment of same, and that each of the notes sued on bear interest at the rate of ten per cent per annum, and it further appearing to the court that the first four described notes were executed on the 8th day of January, 1918, to secure a part of the purchase money for a one-half undivided interest, in and to the hereinafter described tract of land, and that the last two described notes were executed on the 3rd day of February, 1919, to secure a part of the purchase money for a one-sixth undivided interest in and to the following described tract of land, to-wit: (Here follows description.)

"It is therefore considered by the court that the plaintiff, J. A. Knowles, do have and recover of the defendant, William Armstrong and Ethel Armstrong, the sum of $743.05, principal, interest and attorneys fee on the first four described notes, and that the plaintiff have judgment against William Armstrong, Ethel Armstrong and Frank Fortson, jointly and severally, for the sum of $288.75 principal, interest and attorneys fees on the last two described notes, with interest on all of said notes from this date at the rate of ten per cent per annum, together with his costs in this behalf expended, and it is ordered, adjudged and decreed by the court that the lien as it existed on the 8th

day of January, 1918, upon the above described tract of land, be and the same is hereby foreclosed; and that the clerk of this court do issue an order of sale, directed to the sheriff or any constable of Gregg County, Texas, commanding him to seize and sell the above described tract of land as under execution, and that he apply the proceeds thereof to the payment and satisfaction of the said sum of $1031.75, together with all interest that may be due thereon, and the costs of this suit, etc."

Article 2218, R.S. provides: "Judgments for the foreclosure of mortgages and other liens shall be that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property subject thereto, and, except in judgments against executors, administrators and guardians, that an order of sale shall issue to the sheriff or any constable of the county where such property may be, directing him to seize and sell the same as under execution, in satisfaction of the judgment."

It is contended that, as the lien on the undivided one-half interest in the land securing payment of the four notes for $105 existed from and after January 8, 1918, and as the lien on a one-sixth interest in the land existed from and after February 3, 1919, and, as the judgment recites, "that the lien as it existed on January 8, 1918, upon the above described tract of land be and the same is hereby foreclosed" and as the judgment does not expressly recite that the lien "as it existed on February 3, 1919," be foreclosed, therefore, that the judgment does not dispose of the issue as to the foreclosure of the lien securing payment of the notes dated February 3, 1919, because of which it is not a final judgment. If we were to disregard all other terms of the judgment, and assume, as appellants contend, that it is silent in determination of the issue of foreclosure of the lien secured by the two notes dated February 3, 1919, the legal effect of such silence would merely be a denial by the court of all the relief sought by plaintiff, that is, a judgment against him on that part of his demand seeking foreclosure of the lien dated February 3, 1919, and would not destroy the finality of the judgment. For, where plaintiffs' pleadings put in issue his right to recover upon two causes of action, a judgment expressly ordering recovery upon one, but silent as to the other, is prima

facie an adjudication that plaintiff was denied recovery upon such other cause, unless the contrary appears from the face of the judgment. Trammell v. Rosen, 106 Tex. 132, 157 S.W. 1161; Angelina County v. Bond (Tex.Civ.App.) 16 S.W.(2d) 338; Davies v. Thomson, 92 Tex. 391, 49 S.W. 215; Tennison v. Donigan (Tex.Com.App.) 237 S.W. 229; 3 T.J. 119, § 57. However, when all the terms of the judgment are considered together, it clearly constitutes a foreclosure of the two notes dated February 3, 1919, as well as the four notes dated January 8, 1918. As to each of the series of notes, the judgment finds the amount of the indebtedness, the existence of the vendor's lien on the land securing their payment, and orders the land sold in satisfaction of the aggregate indebtedness. In its legal effect the judgment accomplishes all that a court is authorized to do in a foreclosure proceeding, and as certain in its result as if the verbiage of the statute had been used. The test of finality of a judgment is not controlled by its correctness, but by its character in completeness of disposition of the parties and subject-matter before the court. 3 T.J. 113, § 55.

 Appellants further attack the validity of the judgment in cause No. 4337 in that it does not order that separate sale be made of the one-half and of the one-sixth undivided interests in the land, in satisfaction of the separate amounts to which such interests are respectively subject. The amount of the first series of notes executed by J. W. and Ethel Armstrong is shown to be $743.05, secured by vendor's lien on an undivided one-half interest in the land, the amount of the second series of notes as $288.75 secured by vendor's lien on one-sixth undivided interest in the land. The judgment, in effect, orders the one-half and the one-sixth interests sold together in satisfaction of the aggregate of the two series of notes, $1,031.75. This was not in compliance with the procedure intended by the statute, article 2218. The statute implies that only those tracts or undivided interests may be sold together which are subject to the same lien, and in satisfaction only of the indebtedness which they secure; this in order that each tract or interest may be subjected only to the burden which it is under. The one-half interest was not liable for the indebtedness against the one-sixth interest nor

vice versa. The error in rendition of judgment ordering the two undivided interests sold together in satisfaction of the gross amount of the indebtedness is such an error as would, on direct appeal, require reversal of the judgment. Dishman v. Frost (Tex.Civ.App.) 140 S.W. 358; McPhaul v. Byrd (Tex.Civ.App.) 174 S.W. 644. But the error does not, as contended, render the judgment void. The trial court had jurisdiction, properly invoked, of the parties and of the subject-matter. In Clayton v. Hurt, 88 Tex. 595, 598, 32 S.W. 876, 877, it is said: "Where a court of general jurisdiction, in the exercise of its ordinary judicial functions, renders a judgment in a cause in which it has jurisdiction over the person of the defendant and the subject-matter of the controversy, such judgment is never void, no matter how erroneous it may appear, from the face of the record or otherwise."

In Texas Employers' Ins. Ass'n v. Ezell (Tex.Com.App.) 14 S.W.(2d) 1018, 1019, it is said: "There is a distinction between jurisdiction as such and the exercise of jurisdiction. Jurisdiction, broadly stated, means the power to hear and determine. Jurisdiction, therefore, includes the power to determine rightfully or wrongfully. It would not be logical to say that jurisdiction attached only where the decision was right. It can make no difference how erroneous the decision may be; if the court has jurisdiction of the parties and subject-matter, its determination of the controversy is not void, and it can make no difference that the error of decision is apparent from the face of the record." For further authorities, see 25 T.J. 700, § 258.

Therefore, the judgment not being void nor reversed upon appeal, it remains valid until vacated. The suit to vacate the judgment is one seeking equitable relief, and may not be used as a substitute for an appeal to review errors or mistakes into which the trial court may have fallen in rendition of the judgment. 25 T.J. 600, § 195. A court of equity does not act merely to correct errors, but to grant relief from injustice or harm. Hence, to show that error was committed in the judgment in its manner of ordering sale of the land is not alone sufficient to invoke the equitable powers of the court to vacate it. Some substantial injury must be shown to have resulted. Therefore, the question

here presented is: Did the trial court in the present case err in failing to find that appellants have shown themselves injured by the error now complained of in the judgment in cause No. 4337? The record answers the question in the negative. The interests in the land, being undivided interests, were proportionately of the same value. No showing is made that the land sold for less than its full value, or that it would have brought more had the undivided interests been sold separately. Application of the proceeds of the sale in bulk to the aggregate indebtedness appears in this instance not to have in fact resulted in causing either of the undivided interests to pay any of the indebtedness against the other.

Not only have appellants failed to show injury resulted to them from the error complained of in the judgment rendered in cause No. 4337, but they have also failed to allege or prove that they had any defense to said cause. They allege, in effect, that, had they known of the suit, they would have paid the notes and discharged the lien. This is not an allegation of defense, but rather an implied admission of the justness of the suit. That appellants must have had a meritorious defense to the cause of action in which they have suffered an adverse judgment is a fundamental ground upon which the equity of their suit to vacate the judgment must rest. Brownson v. Reynolds, 77 Tex. 254, 13 S.W. 986; Sharp v. Schmidt & Zeigler, 62 Tex. 263, 265; Brown v. Clippinger, 113 Tex. 364, 256 S.W. 254; Farmers' State Bank v. Jameson (Tex.Com. App.) 11 S.W.(2d) 299; Lamb-McAshan Co. v. Ellis (Tex.Com.App.) 270 S.W. 547; Scott v. McGlothlin (Tex.Civ.App.) 30 S.W.(2d) 511; Griffin v. Burrus (Tex. Civ.App.) 24 S.W.(2d) 805; Schleicher v. Markward, 61 Tex. 99; Union Pacific Ry. Co. v. Miller (Tex.Civ.App.) 192 S. W. 358; Ratto v. Levy, 63 Tex. 278; Winters Mut. Aid Ass'n v. Reddin (Tex. Com.App.) 49 S.W.(2d) 1095, 1096, in which it is said: "The courts of this state have established a rule that any person injured in a judgment may at a subsequent term institute a suit to set aside such judgment and retry the cause. This is an equitable proceeding. The essential elements must be alleged showing in particular that the judgment was obtained through the wrongful conduct of the opposite party, unmixed with fault upon the part of the complainant, and, moreover, that the complainant has a meritorious defense which, if heard, would probably bring about a different result."

It is asserted that the case of Hill v. Preston, 119 Tex. 522, 34 S.W.(2d) 780, and Harrison v. Sharpe (Tex.Civ.App.) 210 S.W. 731, are authority for appellants' contention that in this character of case it is not necessary to allege or show a meritorious defense to the judgment sought to be vacated. Hill's suit was not to vacate the judgment of foreclosure, but to establish his right to compel an accounting for credits and to pay off the balance, if any, before sale was made under the judgment. In Harrison v. Sharpe, the suit was by Mrs. Sharpe to set aside a judgment and all proceedings thereunder, including the sheriff's sale and deed, foreclosing a tax lien upon her home, without citation or notice to her of the suit or sale. The judgment recited personal service of citation, but the officer's returns so reciting were found to be untrue. The property of the value of $3,500 was sold for the grossly inadequate price of $110; thus, injury was shown. Harrison, the purchaser at the sale, was not an innocent purchaser for value. Mrs. Sharpe tendered him the $110 with interest thereon from the date of his purchase. The trial court set aside the judgment of foreclosure and all proceedings thereunder. The Amarillo Court of Civil Appeals affirmed the judgment of the trial court, but on motion for rehearing modified its judgment of affirmance, "so as to only annul the sale itself and the sheriff's deed," holding, "that a proper judgment in cases of this kind would be merely to set aside the sale, leaving the judgment undisturbed. Such would afford all the relief necessary and would eliminate the question as to the necessity of alleging a meritorious defense to the judgment and of making the state a party to the proceedings." In the case of Rowland v. Klepper, 227 S.W. 1096, 1097, similar to Harrison v. Sharpe, in all respects material, the Commission of Appeals held:

"We approve the action of the Court of Civil Appeals in this case [189 S.W. 1033] in affirming the trial court's judgment except as to that part of the order setting aside the judgment in the tax suit.

"In Harrison v. Sharpe, supra, judgment of the trial court setting aside both the judgment and the sale was on original hearing affirmed. On rehearing in that case the court took note of the fact that an

application for writ of error had been granted in this case by the committee of judges, and of the view under which it was granted, to wit, that the Court of Civil Appeals erred in holding that the judgment could be annulled without the state being made a party, and without an allegation of meritorious defense. In this connection Associate Justice Boyce stated in the opinion on rehearing that the court were inclined to the view that a proper judgment in cases of that character would be merely to set aside the sale, leaving the judgment undisturbed. It thereupon so modified the judgment on original hearing as to annul the sale only. This eliminated any questions as to the necessity of alleging a meritorious defense and of making the state a party.

"The reason assigned in the Harrison Case for reforming the judgment in the manner pointed out exists in this case, and to so reform it will in no wise injuriously affect plaintiff in error.

"We therefore recommend that that part of the judgment of the Court of Civil Appeals setting aside the judgment in the tax suit be eliminated, and that the judgment as thus reformed be affirmed."

Appellants' eighth proposition reads: "Where judgment in a foreclosure suit decrees a foreclosure against certain property the order of sale thereon must follow the judgment, otherwise the order and sale thereunder are void."

 A sheriff's sale made under an order of sale, which order of sale was not authorized by the judgment, passes no title to the purchaser. Mills v. Pitts, 121 Tex. 196, 48 S.W.(2d) 941, 84 A.L.R. 319; Rule v. Richards (Tex.Civ.App.) 159 S.W. 386, 388; Richards v. Rule (Tex.Com. App.) 207 S.W. 912; Criswell v. Ragsdale, 18 Tex. 443; 18 T.J. 571, § 35, 584, § 46; 42 C.J. 200. The order of sale here in question ordered the sheriff to sell an undivided two-thirds interest in the tract of land, and the sheriff's returns show that he sold a two-thirds undivided interest in the land. Plaintiffs in error construe the judgment as directing sale of the entire tract of land, and that the order of sale directing sale of only two-thirds undivided interest in the land was therefore not authorized by the judgment. We do not agree with appellants' construction of the judgment. The judgment declares the amounts found to be due on each of the two series of notes; that they are ven-

dor's lien notes; that the first four were executed "to secure a part of the purchase money for a 1/2 undivided interest in and to the hereinafter described tract of land"; and that the last two notes were executed "to secure a part of the purchase money for a 1/6 undivided interest in and to the following described tract of land, to-wit. * * *" Following which is the description of the field notes of the land. The judgment then decrees a foreclosure "upon the above described tract of land," and directs that the order of sale issue commanding the sheriff to sell "the above described tract of land" in satisfaction of the total indebtedness due on the two series of notes. In determining what property the judgment is decreeing to be sold, the language designating a one-half and a one-sixth undivided interests may not be disregarded as a part of its description; and the language "the above described tract of land," is to be taken in connection therewith, and not merely as referring to that part of the description of the land describing its field notes. This construction accords with plaintiffs' petition, which may be looked to if the judgment be considered from its face ambiguous. Lipsitz v. First Nat. Bank (Tex. Com.App.) 293 S.W. 563; 25 T.J. 461, § 89. The intention of the judgment to order sale of the one-half and one-sixth (or two-thirds) undivided interest in the land is clearly evidenced, hence the order of sale properly followed the judgment.

 Appellants next complain of the sheriff's sale because the last two issues of the publication of the notices of sale recited that the sheriff would sell the interest of Joe Holland and of Will Hawkins in the land. The first issue of the publication of the notice was regular, and the last two were irregular only in the respect mentioned. No injury is shown to have resulted from the mistake mentioned in publication of the last two notices, and no contention is made that the land sold for less than its full value, or that it might have sold for more but for the irregularity in the last two notices. The irregularity in the notices did not render the sale invalid as a matter of law. Hodges v. Commonwealth Bank & Trust Co. (Tex.Civ.App.) 44 S.W.(2d) 400; Morris v. Hastings, 70 Tex. 26, 7 S.W. 649, 8 Am.St.Rep. 570. In such circumstances, the sale will not be set aside in the absence of a showing of inadequacy of the purchase price of the land. Houston

v. Shear (Tex.Civ.App.) 210 S.W. 976; Allen v. Pierson, 60 Tex. 604.

Therefore, it appears that the trial court's judgment in the present case refusing to cancel the judgment, order of sale, or sale in cause No. 4337, is not without its proper support in fact and in law.

The trial court's action in refusing to vacate the judgment is also supported by appellees' plea of the statute of four years' limitation (Vernon's Ann.Civ. St., art. 5529). Appellants' petitions seeking to vacate the judgment were filed more than seven years after the judgment was entered. The rule, supported by an abundance of authorities, is stated in 25 T.J. 643, § 227: "Equity suits to vacate judgments are barred if filed more than four years after the cause of action has accrued * * * even though, in the first instance, a new trial might have been granted under Article 2236 of the Revised Statutes. When based on fraud, the suit is barred after four years from the time of the discovery of the fraud or from the time the fraud might have been discovered by the use of reasonable diligence. Likewise, where the judgment record affirmatively shows service, a suit to vacate for the want of process must be brought within four years from the time that rendition of the judgment was discovered or, with the use of reasonable diligence, might have been discovered."

Appellants contend that fraud was practiced by J. A. Knowles in procuring issuance of the citation by publication, and that limitation did not begin to run until they discovered the fraud, or, by the exercise of reasonable diligence, should have discovered it. We have already discussed the issue of fraud and have determined that the facts sufficiently support a finding of the trial court that J. A. Knowles was not guilty of the alleged fraud, hence the trial court's judgment concluded that issue against appellants. Owen v. City of Eastland (Tex.Com.App.) 78 S.W.(2d) 178.

The case of Harrison v. Orr (Tex. Com.App.) 296 S.W. 871 and Id. (Tex. Com.App.) 10 S.W.(2d) 381, are cited as authority for the further contention that the statute of four years' limitation does not begin to run against a suit to cancel a judgment obtained upon service by publication until the complainant is shown to have acquired knowledge of the judgment, or, by use of reasonable diligence, might have discovered it. An examination of the opinion of the Court of Civil Appeals in the Orr Case, reported in 285 S.W. 650, there styled Orr v. Wallace, will reveal that the language of the Commission of Appeals in 296 S.W. 871 and 10 S.W.(2d) 381, is founded upon the fact issue that no manner of service, either actual or constructive, was obtained upon Orr, the defendant, in the judgment reciting personal service upon him. Levy v. Roper, 113 Tex. 356, 256 S.W. 251, and Dashner v. Wallace, 29 Tex.Civ.App. 151, 68 S.W. 307, are likewise based upon the absence of any character of service. These cases do not announce a rule contrary to that above quoted from Texas Jurisprudence. The fact alone that citation was obtained by publication is not sufficient to suspend the running of the statute of limitation against appellants' suit to cancel the judgment foreclosing the vendor's lien on the land.

The record also supports the judgment of the trial court against appellants and in favor of Shell Petroleum Corporation, upon its plea of innocent purchaser for value of the mineral interest in the land conveyed to it, by J. A. Knowles et al. under the oil and gas lease hereinbefore mentioned. It appears that Shell Petroleum Corporation paid full value for the conveyance, and without any knowledge of the alleged fraud charged by appellants against Knowles in procuring the affidavit for citation by publication. In the circumstances, a subsequent vendee, as the Shell Petroleum Corporation, for value, may rely upon the validity of the judgment regular upon its face. Crow v. Van Ness (Tex.Civ.App.) 232 S.W. 539; Carpenter v. Anderson, 33 Tex.Civ.App. 484, 491, 77 S.W. 291; Williams v. Young, 41 Tex.Civ.App. 212, 90 S.W. 940; Warne v. Guaranty State Bank (Tex.Civ.App.) 239 S.W. 277; Huckins v. Leitner (Huckins v. Kapf), 4 Willson, Civ.Cas.Ct.App. § 16, 14 S.W. 1016; Dean v. Dean (Tex.Civ. App.) 165 S.W. 90. The burden was upon appellants, which they wholly failed to discharge, to show that Shell Petroleum Corporation, in whom the legal title rested, had notice of the alleged fraud upon which appellants based their right in equity to recover. Elliott v. Wallace (Tex.Civ. App.) 42 S.W.(2d) 1058; Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325; Teagarden v. R. B. Godley Lumber Co.,

105 Tex. 616, 154 S.W. 973; Day v. Johnson, 32 Tex.Civ.App. 107, 72 S.W. 426; Crow v. Van Ness (Tex.Civ.App.) 232 S.W. 539.

After careful examination of the record, we have found no error in the judgment of the trial court, and it will be affirmed.